Virginia Katani FARIS, Plaintiff,

v.

POTOMAC ELECTRIC POWER COMPANY, Defendant.

Civ. A. No. 90–0573 (CRR).

United States District Court, District of Columbia.

Jan. 7, 1991.

Virginia Katani Faris, Silver Spring, Md., pro se.

Jack E. Strausman, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Proceeding *pro se*, the plaintiff in the above-captioned case is suing the Potomac Electric Power Company ("PEPCO") for $50,000 in damages caused by a fire allegedly started due to the defendant's wrongdoing and for $100,000 for the plaintiff's allegedly "traumatic" nine-year-long relationship with the defendant. The defendant has filed a motion for summary judgment, which the Court shall grant because there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law.

Before proceeding to discuss the fire itself, a brief summary of the background is necessary. The record indicates that the plaintiff and the defendant have had a long-running dispute over the plaintiff's failure to pay her electric bills. Apparently due to a combination of the plaintiff's limited income and a malfunctioning internal appliance (an air conditioning/heating unit for which the defendant was not responsible), the plaintiff's account with the defendant mounted to well over $1,000 in arrears. Although the plaintiff periodically made payments of certain amounts to the defendant (either herself or by virtue of assistance from assorted programs or agencies), she was not able to make any significant inroads on her outstanding debt to the defendant. In response to the plaintiff's complaint that the defendant was overcharging her, the Maryland Public Service Commission ("PSC") and PEPCO conducted an investigation. This investigation revealed that the defendant was charging the plaintiff at the appropriate rate; that the defendant's electric meter was accurate and only measuring consumption from the plaintiff's residence; and that, while the consumption of electricity did seem high, it was not due to any malfunction of the defendant's equipment or any billing errors. Therefore, the PSC eventually closed its file and ultimately concluded that the plaintiff was responsible for paying her outstanding balance with the defendant. After waiting several months without seeing the plaintiff making adequate progress on paying her debt and after providing the plaintiff with notice of intent to disconnect for non-payment, the defendant discontinued service to the plaintiff's Silver Spring, Maryland apartment.

These events set the stage for the unfortunate occurrence that precipitated this lawsuit. On February 5, 1990, four days after the defendant had disconnected service and the day before service was to be restored, the plaintiff lit candles in the bedroom and living room of her apartment. *See* Complaint at (unnumbered) p. 2. Although what happened next is not entirely clear, it seems that the plaintiff went to sleep, *see* Plaintiff's Response to Defendant's Motion for Summary Judgment at 4, and that sometime between 8:00 and 9:00 p.m. a candle fell onto a rug, igniting a fire which spread throughout the room and was extinguished by the Fire Department at about 9:45 or 10:00 p.m. after the plaintiff had called 911, *see* Complaint at (unnumbered) p. 2. The plaintiff alleges that the fire caused extensive property damage in the amount of $50,000 and that the defendant is also liable to her for $100,000 for the suffering the defendant's excessive billing inflicted upon her over a nine-year period.

Although the plaintiff's Complaint is devoid of any specific legal theory to support her claims for relief, the Court is mindful of its obligation to read *pro se* complaints liberally. In this case, the most plausible interpretation of the Complaint is that the plaintiff is asserting a tort claim and charging the defendant with negligence. However, even assuming *arguendo* that the plaintiff can show that the defendant breached a duty to her, the record in this case demonstrates that the essential ele-

ment of "proximate cause" is an insurmountable obstacle for the plaintiff.

It is well established that proximate cause is one of the elements of a *prima facie* negligence case. *See, e.g., Cramer v. Housing Opportunities Comm'n,* 304 Md. 705, 712–13, 501 A.2d 35, 39 (1985); *Vann v. Willie,* 284 Md. 182, 186, 395 A.2d 492, 495 (1978); *District of Columbia v. Freeman,* 477 A.2d 713, 716 (D.C.1984); *District of Columbia v. Cassidy,* 465 A.2d 395, 398–99 (D.C.1983); *see also* W. Prosser & W. Keeton, *Law of Torts* § 30, at 164–65 (5th Ed. 1984).[1] Briefly put, proximate cause is "the legally cognizable nexus between the breach of duty and the damage suffered." *Cramer,* 304 Md. at 713, 501 A.2d at 39. To elaborate, a plaintiff establishes proximate cause by showing that "the injury or damage was either a direct result or a reasonably probable consequence of the [defendant's] act or omission," *Freeman,* 477 A.2d at 715, since "liability will not attach unless the breach of duty has a *substantial and direct causal link* to the plaintiff's injury," *id.* at 716 (emphasis added).

■ The corollary of these propositions is that an unforeseeable, intervening act of a third party or a plaintiff may break the causal chain such that the defendant's act or omission cannot be deemed to have been the proximate cause of the plaintiff's injury. *See Cassidy,* 465 A.2d at 399 ("the injury was the consequence of an unforeseeable, intervening act of a third party which could be neither anticipated nor prevented and for which the [defendant] cannot be held liable under the common law tort principles of negligence and proximate cause"); *Vann,* 284 Md. at 186, 395 A.2d at 495 ("We have defined proximate cause many times in our prior opinions to mean that negligence is not actionable unless it, *without the intervention of any independent factor,* causes the harm complained of." (emphasis added)).

■ On the facts of this case, the plaintiff's own acts or omissions break the causal chain and, as a matter of law, prevent the defendant from being held liable for the fire. Even if the record is not sufficiently clear to compel a definite conclusion as to whether the plaintiff was contributorily negligent, the Court holds that the plaintiff's actions were an intervening, independent cause of the fire. Moreover, although her decision to illuminate her apartment with candle light is foreseeable, her going to sleep with candles lit in two rooms or otherwise failing to attend to the candles so as to prevent one or more of them from falling onto the rug is by no means foreseeable. Although the defendant's decision to disconnect electric service to the plaintiff's apartment may have motivated her to light the candles in the first place, the plaintiff's actions were an intervening cause of the subsequent fire. In short, the Court holds that there is no genuine issue of material fact and that the defendant is entitled to summary judgment because its act or omission, if any, was not the proximate cause of the plaintiff's injury.

■ The other aspect of the plaintiff's Complaint—in which she seeks $100,000 for her "traumatic" nine-year-long relationship with the defendant—requires less extensive discussion. The Court sympathizes with the plaintiff's plight, but she has not presented sufficient evidence to show, either from a tort or a contract point of view, that the defendant has done anything wrong. The Court realizes that being in the position of owing the defendant a substantial amount of money but not having sufficient income to remain current on her account has caused the plaintiff significant stress and anguish. However, the record indicates that the defendant attempted to cooperate with the plaintiff in working out a payment plan and in investigating the

---

1. The Court purposely cites both Maryland and District of Columbia cases. Although the defendant may be correct that Maryland law would govern because the plaintiff lived in Maryland and the cause of action arose in Maryland (the fire occurred there and the defendant supplied electric service there), the Court concludes that it is unnecessary to engage in a "choice-of-law" analysis since there is no conflict between the two jurisdictions as to the common law principles upon which the Court relies to resolve this case.

accuracy of its equipment and billing. The plaintiff's unsupported allegations of overcharging by the defendant, as well as her far-fetched speculation that the Department of Justice may be involved in some sort of a conspiracy with the defendant related to the plaintiff's unsuccessful Freedom of Information Act ("FOIA") litigation,[2] simply are insufficient to preclude summary judgment for the defendant.

The Court will issue an Order of even date herewith in accordance with the foregoing Memorandum Opinion.

**2.** The plaintiff filed a FOIA lawsuit against the Department of Justice, *see Faris v. Department of Justice, et al,* Civil Action No. 88–2329, in which Judge Joyce Green granted summary judgment for the defendants on June 16, 1989.

The Court will not permit the plaintiff, who exercised her right to file a FOIA lawsuit and did not appeal Judge Green's adverse ruling, to relitigate those issues in this case.