Jaimie L. **ECKROTH**, Administratrix of the Estate of Dolores Leona Hammond, Deceased, Kimberly Ann Branter, Administratrix of the Estate of Jordan Michael English, a Minor, Deceased, Ronald Depto and Debbie Depto, Co–Administrators of the Estate of Lindsey A. Depto, Deceased, and Ron-

---

ald Depto and Debbie Depto, in their own right, and Chelsey Hammond, a Minor, by her Parent and Natural Guardian, Timothy J. Hammond, and Timothy J. Hammond, in his own right, Appellants

v.

PENNSYLVANIA ELECTRIC, INC., a Corporation, d/b/a Penelec, Appellee

v.

David Gunther, John ("Jack") Sexton, Interactive Performance, Inc., and Outsourcing Solutions, Inc., Appellees.

Superior Court of Pennsylvania.

Argued July 27, 2010.
Filed Dec. 17, 2010.

Neil R. Rosen, Pittsburgh, for Brantner.

Timothy J. Schweers, Pittsburgh, for Depto.

John A. Bacharach, Pittsburgh, for Eckroth.

George W. Bills, Jr., Pittsburgh, for Hammond, Chelsea and Timothy.

Robert J. Garvin, Pittsburgh, for Gunther.

Edward A. Yurcon, Pittsburgh, for Interactive and Outsourcing.

Charles E. Wasilefski, Harrisburg, for Penelec.

Christopher J. Regan, Wheeling, WV, for Sexton.

BEFORE: STEVENS, OLSON, and OTT, JJ.

OPINION BY STEVENS, J.:

This is one of four appeals taken from the October 28, 2009 order entered by the Court of Common Pleas of Cambria County, which, sitting *en banc*, granted summary judgment in favor of Defendant/Appellee Pennsylvania Electric, Inc. ("Penelec") and dismissed Plaintiff/Appellants' wrongful death/negligence action. By a 2–1 decision, the court determined that the fatal house fire from which this sad and tragic case arises was not proximately caused by Penelec's allegedly negligent termination of electrical power to the home two days earlier. While it is foreseeable that a resident might light a candle to illuminate a home's interior after dark, the court reasoned, it is unforeseeable that he would leave a 10″ taper candle with exposed flame unattended overnight on a bathroom shelf just above where towels and toiletpaper were stored. We conclude that with two days and several unreasonable decisions by the residents separating Penelec's alleged negligence and the fire, the causal chain between them was too remote as a matter of law to hold Penelec legally responsible for Appellant's harm. Finding neither error of law nor abuse of discretion in the court's ruling, therefore, we affirm.

The trial court provides an apt recitation of factual and procedural history as follows:

These four consolidated appeals arise from th[e trial court's] Opinion and Order entered October 28, 2009, that, *inter alia*, granted [Penelec's] Motion for Summary Judgment Against All Plaintiffs resulting in the dismissal of the Plaintiffs['] Complaint against Penelec and granting Additional Defendant Out-

sourcing Solutions Incorporated's (OSI) Motion for Summary Judgment Against Penelec resulting in the dismissal of both Penelec's Complaint and the Plaintiff's Complaint against OSI.

This action arises out of a fire that occurred May 14, 2005, in the residence of John Sexton (Sexton) and Dolores Hammond located at 334 Miller Street, Hastings. In addition to Sexton and Ms. Hammond, Chelsey Hammond, Dolores' daughter, Kimberly Ann Brantner, her sons Stephen Paul Pendergras and Jordan Michael English resided in the home. On May 11, 2005, Defendant Penelec, citing chronic nonpayment of bills, terminated electrical service to the home. Beginning that date Dolores Hammond began contacting Penelec and Interactive Performance Incorporated (IPI), a subsidiary of [OSI],[1] that provided billing and customer care services for Penelec, to inquire into the termination of service and seek a resolution to the ongoing dispute between Sexton/Hammond and Penelec over the utility bill.

---

[1] Additional Defendant's [sic] IPI and OSI will be referred to collectively as OSI, [as] from the pleadings it appears that these De-

fendants may have been incorrectly identified.

On May 13, 2005, Chelsey Hammond invited two friends, Lindsey Depto and Alisha McConnell, to stay overnight. In addition to the three girls, also in the home on the night of May 13 were Sexton, Dolores Hammond, and Jordan Michael English.

Sometime during the evening of May 13, Sexton placed two lit candles, one in the kitchen sink and one on a bathroom shelving unit that also contained towels, toilet paper and other items, to act as night-lights. According to the fire marshal's report, at some point in the early morning hours of May 14 the candle in the bathroom fell or was knocked over starting a fire. As a result of the fire Dolores Hammond, Alisha McConnell, Jordan Michael English, and Lindsey Depto perished.

The Plaintiffs initiated this action against Penelec asserting negligence on the part of Penelec surrounding the utility's failure to comply with regulations concerning termination of service, the termination of service itself and other acts that Plaintiffs' [sic] allege directly resulted in the fire.[1] Penelec joined as

1. The Prosecutory Staff of the Pennsylvania Public Utility Commission conducted an investigation into Penelec's termination of electric service at the Sexton/Hammond residence and determined that the company violated provisions of the Public Utility Code and the Commission's regulations. See Settlement Agreement between Penelec and PUC dated 9/27/05. Specifically, the Prosecutory Staff stated in its Opinion and Order accompanying the Settlement Agreement that:

> [h]ad this matter been litigated, Prosecutory Staff would have taken the position that Penelec committed the following acts or omissions: (1) placed the account in the name of a third party without proper verification, a violation of Rule 4 of Penelec's tariff; (2) failed to explain all available methods for avoiding termination, a violation of 52 Pa.Code § 56.97(a)(2); (3) failed

to fully explain the medical certification procedures prior to termination, a violation of 52 Pa.Code § 56.97(a)(3); (4) entered into a payment agreement which obligated the customer to pay current bills plus $15 monthly, instead of budget bills plus $15 which would have been consistent with the Commission's Order in *Mary Frayne v. PECO Energy Co.*, C–20029005 (September 10, 2003); (5) failed to enter into a reasonable payment arrangement with the customer, a violation of 52 Pa.Code § 56.97(a); (6) failed to apply the Commission's dispute procedures to the issue of the application of the $198 payment made by the customer, a violation of 52 Pa.Code § 56.151; (7) issued a termination notice that failed to conform with the notice requirements at 52 Pa.Code § 56.2, a violation of 66 Pa.C.S. § 1406(b)(1)(i); (8) terminated service after

additional defendants: the homeowner David Gunther (Gunther), alleging he was solely liable to the Plaintiffs for his negligence in failing to have or maintain smoke alarms, sprinklers, or fire extinguishers in the home and failing to warn tenants not to burn candles unattended; Sexton asserting that he was solely liable to the Plaintiffs based on his negligence in, *inter alia*, lighting the candle and leaving it burning unattended; and IPI/OSI asserting that it was through the negligence of their employees that electric service was terminated and not restored.

Summary Judgment Motions were filed by: (1) Penelec against all Plaintiffs in which Penelec argued that it could not be liable to any party as its actions were too remote to be either the legal or factual cause of the fire; (2) Penelec against Sexton in which Penelec argued that Sexton's acts were either an intervening cause or were an assumption of the risk that relieves Penelec of liability; (3) OSI against Penelec in which OSI argued that it's [sic] employees took no actions that could be the legal or factual cause of the fire; and (4) Gunther against Penelec in which Gunther argued that Penelec had failed to establish that he owed a duty to the Plaintiffs and that his joinder as an additional defendant was improper. Argument on the motions was heard September 25, 2009, before a three-judge panel of th[e court of common pleas] consisting of Judges Timothy P. Creany, Norman A. Krumenacker, III, and David J. Tulowitzki.

A divided Court[2] entered an Opinion and Order on October 28, 2009, that:

1) granted Penelec's Motion for Summary Judgment Against All Plaintiffs and dismissed the Plaintiffs' Complaint against Penelec;

2) concluded that as a result of the grant of summary judgment for Penelec against all Plaintiffs that Penelec's Motion for Summary Judgment Against Additional Defendant Sexton was moot;

3) granted Additional Defendant OSI's Motion for Summary Judgment Against Penelec and dismissed both Penelec's Complaint and the Plaintiffs' Complaint against OSI;

4) denied Additional Defendant Gunther's Motion for Summary Judgment Against Penelec; and

5) found that the Opinion and Order involved a controlling question of law as to which there is a substantial ground for difference of opinion and certified the matter for immediate appeal.

Following the grants of summary judgment, the Plaintiffs' [sic] filed a Motion to Discontinue as to Fewer than All Parties ... seeking to discontinue the case against the remaining additional defendants, Gunther and Sexton. A hearing was scheduled for November 4,

a dispute had been properly filed, a violation of 52 Pa.Code § 56.141(2); (9) failed to update the household's ability-to-pay information, a violation of 66 Pa.C.S. § 1407; (10) threatened to terminate service to a household at or below 150% of the federal poverty level during the heating season, a violation of 66 Pa.C.S. § 1406(e)(1); (11) applied a 12–month payment formula instead of the 24–month payment formula applicable to the customer's household income level, a violation of 66 Pa.C.S. § 1407; and (12) erroneously stated that it posted 48–hour termination notice, a violation of 52 Pa.Code § 56.1. Penelec disputes Prosecutory Staff's assertions regarding violations of the Code and the Commission's Regulations.
PUC Prosecutory Staff Opinion and Order dated 9/27/05 at 8.

2009, at which time an agreed upon order was entered discontinuing the action against the remaining defendants and preserving Penelec's and OSI's claims against Gunther and Sexton if the grants of summary judgment were reversed.

---

[2] Judge Creany filed a dissenting Opinion concluding that questions of fact remained as to (1) whether Sexton's acts constituted intervening negligent acts and (2) the foreseeability of Sexton's acts.

Timely Notices of Appeal were filed by the Plaintiffs, Gunther, Sexton, and Penelec to the October 28th Opinion and Order and each filed a Concise Statement of Errors Complained of on Appeal (Concise Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925[ ].

The Plaintiff's Concise Statement raises the sole question[ ] of whether the Court erred in determining that the actions of Penelec and/or OSI were not the legal cause of the fire.

\* \* \* \*

Opinion pursuant to Pa.R.A.P. 1925(a) dated 1/28/10 at 1–5 (footnote deleted).

Appellants raise one issue for our review:

**DID THE TRIAL COURT COMMIT SEVERAL ERRORS OF LAW IN CONCLUDING, BASED SOLELY ON THE CONDUCT OF SEXTON, THAT PENELEC'S NEGLIGENCE WAS NOT THE PROXIMATE CAUSE OF THIS FATAL FIRE?**

Brief for Appellants at 3.

■ In reviewing an order granting a motion for summary judgment, an appellate court must determine:

whether the plaintiff has alleged facts sufficient to establish a *prima facie* case. If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally, it must be determined whether, in granting summary judgment, the trial court has usurped improperly the role of the jury by resolving any material issues of fact. *Dudley v. USX Corp.*, 414 Pa.Super. 160, 168–69, 606 A.2d 916, 920 (1992). An order granting a motion for summary judgment will not be reversed absent an error of law or an abuse of discretion. *McDonald v. Marriott Corp.*, 388 Pa.Super. 121, 125, 564 A.2d 1296, 1298 (1989) (citation omitted).

*Reilly v. Tiergarten Inc.*, 430 Pa.Super. 10, 633 A.2d 208, 209–210 (1993).

■ To prove their negligence claim, Plaintiffs/Appellants were required to establish: a legally recognized duty or obligation owed them by Penelec; a breach of that duty; a causal connection between the breach of duty and the resulting injury; and actual loss or damage suffered by plaintiffs. *Id.* Even with proof of both breach of duty as prescribed under statute and the occurrence of injury, therefore, Appellants were still obligated to show the two were linked by causation. *See Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa.Super.2005). *See also Reilly, supra* at 209–210 ("the breach of a statutory duty does not establish a cause of action in negligence, absent proof of causation. . . .").

■ To prove causation, a demonstration that the breach of duty was both the proximate cause and actual cause of injury was required. *Reilly, supra* at 210. "It is not sufficient . . . that a negligent act may be viewed, in retrospect, to have been one of the happenings in the series of events leading up to an injury. Even if the requirement of actual causation has been satisfied, there remains the issue of proximate or legal cause." *Brown v. Philadelphia College of Osteopathic Medicine*, 760 A.2d 863, 868 (Pa.Super.2000). The deter-

mination of proximate cause is "primarily a problem of law" and must, as a threshold matter, be "determined by the judge and it must be established before the question of actual cause is put to the jury." *Id.*

■ "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Lux, supra* at 1286 (citation omitted). See also Restatement of Torts, (Second) § 431 (1965). A determination of proximate or legal causation therefore essentially regards "whether the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm." *Holt v. Navarro,* 932 A.2d 915, 921 (Pa.Super.2007) (citing *Reilly, supra* at 210). *See also* Prosser and Keeton, The Law of Torts (fifth edition) § 42, at 273 (1984) (noting a determination of legal causation "depends on whether the conduct has been so significant and important a cause that the defendants should be legally responsible.... [It] depend[s] essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred."); *and Brown, supra* at 868 (noting "[t]he term 'proximate cause' is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established.").

> Therefore, the court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of. The court must evaluate the alleged facts and refuse to find an actor's conduct was the legal cause of harm when it appears to the court highly extraordinary that the actor's conduct should have brought about the harm.

*Holt, supra* at 921 (internal citations and quotation marks omitted).

Aiding the court in making this determination is Section 433 of the Restatement of Torts, Second (1965), which sets forth a method of determining whether negligent conduct is a substantial factor in producing the injury. It provides:

> **§ 433. Considerations Important in Determining Whether Negligent Conduct is Substantial Factor in Producing Harm.**
>
> The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:
>
> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>
> (c) lapse of time.

*See Holt, supra* at 921.

■ Applying Section 433 to the facts of the present case as read in a light most favorable to non-movant Appellants, we initially stop short of adopting the trial court's opinion that the termination of power created a situation which was in and of itself harmless, as described in subsection 433(b), as we deem Penelec's act a factual, "but for" cause of the harm suffered according to prevailing authority cited *supra.* It is equally clear, however, that no force worked in continuous and active operation up to the time of harm, either, for the record reveals that there were two days between the utility termination and the fire in which daylight broke

the hindrance of darkness, permitting the residents to move unimpaired and without the need for alternate sources of light. Moreover, a subsection 433(c) review of the lapse of time involved shows that this roughly 48 hour interim would reasonably be expected to provide ample opportunity to acquire the now ubiquitous type of safe, low-cost battery powered lighting for use as nightlights. These facts greatly attenuated the nexus between Penelec's alleged negligence and the fire.

Nor in making the subsection 433(a) analysis of looking at the number of factors which contributed to the harm—Penelec's termination of power, Sexton and Hammond's foregoing battery-powered lighting in favor of candlelight, and Sexton and Hammond's decision to leave an exposed, lighted candle unattended during sleeping hours—do we see Penelec's negligence having a substantial effect in bringing about the fire. While two or more causes may contribute to and thus be the legal or proximate cause of an injury, *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619, 623 (1995), the residents' election to forego inherently safe lighting in favor of using an unattended open flame on a storage shelf as a nightlight during sleeping hours stands as an extraordinary breach of fire safety culminating in a fire not reasonably foreseeable as a normal and probable consequence of their loss of electric lighting nearly two days earlier.

Under this Section 433 analysis, therefore, we decline to establish a policy that extends responsibility for negligent termination of electric power 48 hours later to a house fire caused by the open flame of a candle left unattended overnight in a precarious location within the home.[2] It seems highly extraordinary that Penelec's action could have caused Sexton and Hammond to make the decisions from which Appellants' harm directly flowed, such that we are compelled to conclude as a matter of law that Penelec's alleged negligence was not the proximate cause of the tragic consequences that followed it. We acknowledge the lack of intentional wrongdoing on the part of Sexton in this matter, and appreciate the heartbreaking irony that he placed the candle out of care and concern for the child guests who may have needed use of the bathroom during the night. Nevertheless, the fire hazard created by this unforeseeable act mandates our decision today. Accordingly, we affirm the order granting Penelec's motion for summary judgment, as it was entitled to judgment as a matter of law.

Judgment is affirmed.

**2.** This decision accords with decisions reached in other jurisdictions applying the same standards to determine whether a utility was the proximate cause of fire igniting shortly after termination of electric power. *See, e.g., Roberts v. TXU Energy Retail Co., et al.,* 171 S.W.3d 901 (Tx.Ct.App.2005) (upholding grant of summary judgment in favor of utility on conclusion that merely creating the condition that made the fire-by-candle possible falls short of constituting proximate cause; mishandling of candle was proximate cause); *Faris v. Potomac Elec. Power Co.,* 753 F.Supp. 388 (D.D.C.1991) (upholding summary judgment because mother's going to sleep without ensuring that candles lit in two rooms could not fall and ignite rug was in no way foreseeable consequence of electric disconnect). *Accord Davis v. Cindy Preferred,* 743 So.2d 772 (La.App. 4th Cir.1999).