# Hennessy v. Robertson

*Matthew A. Casey* and *Roberta A. Golden*, for plaintiff.

*Sharon L. Steingard*, for defendant Shawn Robertson.

*Joseph M. Toddy* and *Patricia W. Holden* for defendant Bruce Reikow.

*Daniel J. Divis*, for defendants Ryan Caruso, Frank D. Caruso and Rosetta L. Caruso.

YOUNGE, *J.*, April 10, 2014—

## Procedure:

The plaintiff, Patrick L. Hennessy, sued the operators and owners of the vehicles involved in two automobile accidents that occurred in the northbound lanes of the Roosevelt Boulevard, in the City and County of Philadelphia at approximately 2:30 a.m. on the morning of July 26, 2009. In a series of separate actions that were consolidated for trial, the plaintiff also filed medical malpractice actions against various physicians who treated him following the automobile accidents. Prior to trial, the plaintiff settled with the physician defendants resulting in termination of the medical malpractice actions that were consolidated with this case. This case then proceeded as an ordinary negligence action against the above-captioned automobile liability defendants. This case was tried before a jury between May 20, 2013 and May 23, 2013. The plaintiff voluntarily withdrew his case against the defendants, Shawn Robertson, Frank D. Caruso, and Rosetta L. Caruso. On May 21, 2013, this court granted a motion for non-suit in favor of defendant, Bruce Reikow. On May 23, 2013, the jury returned a verdict for the plaintiff and against the defendants, Ryan Caruso and Shawn Robertson, Jr., in the amount of $19,145,904.17. The jury found 45% of the causal negligence attributable to Mr. Caruso. Mr. Caruso then filed a motion for post-trial relief and an appeal following the denial of his post-trial motion.

## Facts:

This case arises from two automobile accidents

that resulted in the above-the-knee amputation of the plaintiff's right leg. In the early morning hours of July 26, 2009, the plaintiff was a passenger in a vehicle operated by Ryan Caruso and owned by Frank Caruso and Rosetta Caruso. They were traveling northbound on the Roosevelt Boulevard when Mr. Caruso struck the rear end of a vehicle operated by the defendant, Bruce Reikow, while Mr. Reikow was sitting stationary at a red traffic signal. As a result of this collision, defendant's vehicle was rendered inoperable. Following this accident, the plaintiff and a passenger in the Reikow vehicle began to push the Caruso vehicle to the shoulder of the Roosevelt Boulevard. At approximately the same time, the defendant, Shawn Robertson, Jr., was traveling northbound on the Roosevelt Boulevard. While in the process of pushing the Carusos' disabled vehicle from the roadway, the vehicle operated by Mr. Robertson struck the rear end of Mr. Reikow's vehicle and spun or careened into the left rear corner of the Carusos' vehicle crushing the plaintiff. On August 24, 2009, after several weeks of medical treatment, the plaintiff's leg was amputated above the right knee.

Issues Averred in Defendant's Motion for Post-Trial Relief:

This court ruled against the defendant, Ryan Caruso, on his argument that two separate accidents had occurred and that he was not liable for injuries caused by Shawn Robertson, Jr., when he struck the rear of the two vehicles and crushed the plaintiff. This court submitted a verdict slip that allowed the jury to apportion liability between the parties, and it instructed the jury on how to apportion

harm between joint tortfeasors.

On June 3, 2013, Mr. Caruso filed his motion for post-trial relief. This court requested a briefing schedule and following production of the trial transcripts, the parties submitted briefs. Mr. Caruso's brief addressed seven separate issues under the following headings:

A. Defendant Ryan Caruso is entitled to a new trial based on the prejudice resulting from the trial court erroneously ruling that defendant Caruso was a joint tortfeasor with defendant, Shawn Robertson, Jr...

B. Defendant Ryan Caruso is entitled to a new trial based on the prejudice resulting from the trial court's failure to give standard jury charge 7.8, its use of an improvised charge that was incomplete and biased against Caruso and its use of a verdict slip that was confusing and misrepresented the law...

C. Defendant Ryan Caruso is entitled to a new trial based on the prejudice resulting from the trial court erroneously permitting plaintiff's accident reconstruction expert to testify...

D. Defendant is entitled to a new trial based on defendant Shawn Robertson's conduct and sole liability for the plaintiff's injuries...

E. Defendant is entitled to a new trial on all issues because the issue of liability and damages are inextricably intertwined...

F. The verdict in plaintiff's favor was contrary to

the facts and the law and against the weight of the wvidence...

G. The jury award is clearly excessive and exorbitant and should be reduced...

(Defendant, Ryan Caruso's, brief in support of his motion for post-trial relief (September 16, 2013).)

Discussion:

A. This Court Properly Ruled that the Jury Should Consider Whether Defendant, Ryan Caruso, and Defendant, Shawn Robertson, Jr., Were Joint Tortfeasors.

In the first section of his motion for post-trial relief, Mr. Caruso did not accurately portray what occurred at trial when he argued that this court erroneously ruled that he and Mr. Robertson were joint tortfeasors. This court did not rule that Mr. Caruso and Mr. Robertson were joint tortfeasors. On the contrary, this court allowed the status of the two defendants to be determined by the jury. In addition to misstating this issue in his motion for post-trial relief, Mr. Caruso made a fatally flawed argument when he argued that the jury should not have been permitted to consider him a joint tortfeasor with Mr. Robertson. He argued that this court committed reversible error when it failed to intervene and rule that two separate accidents occurred with damages that were capable of apportionment. In fact, Mr. Caruso suggested that this court was obligated to rule that the defendants were *not* joint tortfeasors and that the failure to so rule was error. In support of this bald contention, Mr. Caruso points to

the fact that no evidence was presented to show that the plaintiff's leg was injured prior to the second collision with Mr. Robertson. The fact that the plaintiff was able to help push the Carusos' vehicle following the first collision was critical under this argument. From this fact, Mr. Caruso infers that the plaintiff could only have lost his leg as a result of the second collision for which he argued he was not responsible.

Mr. Caruso wrongly contended that the jury should not have been permitted to assess his responsibility for the plaintiff's above-the-knee right leg amputation and apportion liability accordingly. Despite his erroneous phrasing, this first issue averred by Mr. Caruso is, in reality, a question of proximate causation or legal causation, and his argument failed because it is hornbook law that a tortfeasor is responsible for the consequences of his tort. *Spangler v. Helm's New York-Pittsburgh Motor Exp.*, 396 Pa. 482, 153 A.2d 490 (1959); *Boggavarapu v. Ponist*, 18 Pa. 162,165 (1988).

Pennsylvania has adopted the substantial factor test for determining whether a party's negligence is the proximate or legal cause of a plaintiff's harm. Pursuant to the Restatement (Second) of Torts §433(b), a defendant's negligent conduct will be found to be a substantial factor if it has "created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible." Restatement (Second) of Torts § 433 (1965).

The test for proximate cause is:

Even where harm to a particular plaintiff may be reasonably forseeable from the defendant's conduct, and that conduct is the cause-in-fact of the plaintiff's harm, the law makes a determination that, at some point along the causal chain, liability will be limited. The term "proximate cause", or "legal cause" is applied by courts to those considerations which limit liability, even where the fact of causation can be demonstrated. Because of convenience, public policy, or a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point, as no longer a "proximate" or "legal" consequence naturally flowing from the wrongdoer's misconduct... To put it simply, at a certain point, negligent conduct will be viewed as too remote from the harm arising to the plaintiff and thus not a substantial factor in bringing about the plaintiff's harm.

*Alumni Ass'n v. Sullivan*, 369 Pa. Super. 596, 535 A.2d 1095 (1987).

Pennsylvania has also adopted the definition of proximate cause set forth in the Restatement (Second) of Torts § 431 (1965), which reads, "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." The Restatement (Second) of Torts § 433 establishes a tripartite tests for determining whether an

actor's conduct is a substantial factor in bring about harm to another.[1] The three relevant factors under this tripartite test are, "(a) the number of other factors that contribute to producing the harm and the extent of the effect which they have in producing it, (b) *whether the actor's conduct created a force or series of forces which are in continuous and active operation up to the time of the harm*, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (c) the lapse of time." Restatement (Second) of Torts § 433 (emphasis added); *See also Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977); *Hicks v. Metropolitan Co.*, 665 A.2d 529 (Pa. Cmwlth. 1995) (for a general discussion of these issues). By the very definition of proximate cause contained in the restatement, a tortfeasor's conduct is considered a cause of harm if he has created a series of forces which are in continuous operation up to the time of the harm. In the case *sub judice*, there was a clear issue for the jury to resolve as to whether Mr. Caruso set forces in motion which were continuous and resulted in the amputation of plaintiff's leg when he negligently rear ended Mr. Reikow's vehicle and disabled both vehicles in the middle of the Roosevelt Boulevard — one of the biggest and busiest thoroughfares in the City of Philadelphia, having its own history of

---

1. Restatement of Torts (Second) § 433 reads, "The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another: (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; (c) lapse of time."

major high-speed automobile accidents involving motor vehicles and even the death of pedestrians. Mr. Caruso admitted that he negligently disabled the vehicle that he was operating; therefore, it had to be moved to safety from the Roosevelt Boulevard. The fact that the second accident occurred while the plaintiff was in the process of moving the Carusos' disabled vehicle clearly illustrated that the jury was within its rights to assign responsibility for the ultimate harm to both defendants Mr. Caruso and Mr. Robertson.

In *Taylor v. Jackson*, 643 A.2d 771 (Pa. Commw. 1994), the Commonwealth Court addressed the issue of proximate cause and the substantial factor test in the context of a summary judgment motion that had been granted by a trial judge in the Northumberland County Court of Common Pleas. That case was factually similar to the case *sub judice* in that it involved a series of automobile accidents. In *Taylor*, a tractor-trailer jackknifed on Interstate 80 blocking both lanes of travel. *Id.* at 773. About five minutes later, a second automobile accident occurred between vehicles that were caught in a traffic jam created by the jackknifed tractor-trailer. Two hours later and about one-half mile away from the second accident a third accident occurred in traffic that had accumulated behind the jackknifed tractor-trailer. The parties involved in this third accident sued, among other parties, the drivers of the vehicles involved in the first and second accidents. *Id.* at 775. The trial court concluded that the two hour lapse rendered any negligent conduct on the part of the drivers in the first and second accidents not continuous and not

active up to the time of the harm suffered by the drivers in the third accident. The court entered summary judgment because it held no reasonable jury could find proximate cause between the drivers conduct and the harm suffered by the plaintiff in the third accident.

The Commonwealth Court reversed the award of summary judgment and concluded that the trial court's determination was in error because the issue of causation should have been submitted to the jury. The court wrote:

> Comment (f) of Restatement (Second) of Torts § 433(c) provides that "where it is evident that the influence of the actor's negligence is still a substantial factor, mere lapse of time, no matter how long it is, is not sufficient to prevent it from being the legal cause of the other harm." Moreover, our [S]upreme [C]ourt in *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977), observed that the determination of whether an actor's conduct was a substantial cause of the injuries complained of should not be taken from the jury if the jury may reasonable differ about whether the conduct of the actor has been a substantial factor in causing the harm. Since we believe that reasonable individuals can differ regarding the question of whether a two hour period should insulate a negligent actor from suit given the particular and unique facts of the instant matter, we hold that the trial court erred in granting summary judgment.

*Id.* at 777.

The Superior Court discussed what is known as

proximate or legal cause and the substantial factor test in the context of a summary judgment motion in *Eckroth v. Pennsylvania Elec. Inc.*, 12 A.3d 422 (Pa. Super. 2010). In *Eckroth* the Cambria County Court of Common Pleas, sitting *en banc*, granted summary judgment in favor of Pennsylvania Electric in a wrongful death action that was brought following a fire that occurred when residents used candles to illuminate their home after Pennsylvania Electric turned off their power for chronic nonpayment of bills. *Id.* at 425-426. Evidence presented in *Eckroth* suggested that Pennsylvania Electric violated certain provisions of the Public Utility Code and regulations of the Pennsylvania Public Utility Commission when it turned off the decedents' power; however, the fire occurred almost two days after termination of the decedents' power. *Id.* at 425-426 n1.

In *Eckroth*, the Superior Court affirmed the trial courts' grant of summary judgment, and applied the Restatement of Torts (Second) §433. The court held that summary judgment was appropriate because of the greatly attenuated nexus between Pennsylvania Electric's negligence and the tragic fire that occurred which meant that the decedents' representatives could not establish legal or proximate cause. The court reasoned that the lapse of two days between the termination of electric service and the tragic fire was sufficient time to secure safe lighting equipment. Critical, was the decision to burn candles in an area that could ignite surroundings home furnishings. The Superior Court held, as a matter of law, that the negligence of Pennsylvania Electric was not a substantial factor in the

tragic house fire. *Id.* at 429-430.

In the case *sub judice*, this court declined to hold as a matter of law that Mr. Caruso's negligence was not a substantial factor in bringing about the above-the-knee right leg amputation suffered by the plaintiff. The plaintiff came forward with evidence to show that Mr. Caruso, by his negligent acts, not only struck the vehicle operated by Mr. Reikow, but he also created the highly unsafe situation that disabled both vehicles in the northbound lanes of the Roosevelt Boulevard — a major artery through Northeast Philadelphia on which vehicles routinely travel well in excess of the posted speed limit. While the unsafe condition caused by Mr. Caruso's negligence remained, the vehicle operated by Mr. Robertson struck both the Reikow and Caruso vehicles crushing the plaintiff.

This court allowed the jury to determine that the second collision, regardless of Mr. Robertson's own negligence, would not have happened but for Mr. Caruso's negligent act of striking the Reikow vehicle. Based on the verdict, the jury found that Mr. Caruso's negligence was a substantial factor in both impacts. The fact that the plaintiff's right leg was not injured in the first accident did not relieve Mr. Caruso of responsibility for the harm his negligent conduct created. Therefore, the extent of the plaintiff's injury in the first accident was irrelevant.

B. Defendant Presented No Grounds for a New Trial Based on the Court's Jury Charge or the Verdict Slip.

The second group of issues raised by Mr. Caruso in his brief in support of his motion for post-trial relief were

closely related to issues that were previously discussed above in § A of this opinion. Mr. Caruso argued that this court should have instructed the jury in accordance with Pennsylvania Standard Civil Jury Instruction 7.80 entitled apportionment of damages (two or more defendants)-district damages.[2] Mr. Caruso also found fault with the verdict sheet submitted by this court that permitted the jury to apportion damages between the defendants. Mr. Caruso submitted a proposed verdict sheet that did not allow for the jury to apportion damages. The verdict sheet proposed by Mr. Caruso would have removed the issue of apportionment from the jury.

There was absolutely nothing wrong with the jury charge read by this court or the verdict sheet that was ultimately submitted to the jury. This court did not read suggested standard jury instruction 7.80; however, a select portion of its jury charge accurately explained the relevant principles encompassed by standard charge 7.80 as proposed by Mr. Caruso. This court instructed the jury:

> Members of the jury, the defendant, Ryan Caruso, contends in this matter that although he is negligent for rear-ending the vehicle operated by Bruce Reikow, he is not liable for injuries sustained by the Plaintiff,

---

2. Pennsylvania Suggested Standard Jury Instruction §7.80 reads, "The plaintiff claims that each of the defendants' negligence has contributed to [his] [her] damages. As I have told you, in order to recover in this case against one or more of the defendants, you must find that the conduct of the defendant whom you have found negligent was a factual cause in bringing about the plaintiff's damages. If you find that a defendant caused distinct damages from those of another defendant, you must decide what percentage of the plaintiffs damages was caused by that defendant's negligence. The verdict slip will have a space in which you can write in the percentage figures."

Patrick L. Hennessy, because he did not cause the specific harm suffered by Mr. Hennessy. That is Mr. Caruso's contention.

Mr. Caruso argues that Mr. Hennessy's leg amputation was caused by factors set in motion by the negligence of defendant, Shawn Robertson, when he rear-ended Mr. Reikow's vehicle in a separate collision sometime after the initial collision.

For purposes of this case, however, jurors, you are allowed although not required, to consider, to consider the events that unfolded on the night of July 26, 2009 to constitute one single incident or accident.

The law in Pennsylvania is that if two or more causes combine to produce a single harm which is incapable of being divided on any logical, reasonable or practicable basis, and each cause is a factual cause in bringing about harm, an arbitrary apportionment should not be made.

(Tr. Transcr. 104-105 (5/22/13).)

A plain reading of this tailor made charge, in conjunction with suggested standard civil jury charge 7.80, illustrates how the tailor made portion of this court's charge accurately explained relevant law and the jury's role in interpreting the disputed facts. There was nothing improper about this court instructing the jury with a tailor made charge that specifically explained the issues in this case.[3] The jury charge, taken as a whole, explained the

---

3. The law in Pennsylvania is clear, "A trial judge has wide latitude

verdict sheet and the questions that the jury would need to answer on the verdict sheet. The instructions given by this court in conjunction with the verdict sheet permitted the jury to apportion harm between joint tortfeasors. However, the jury was never required to find that Mr. Caruso's negligent conduct caused injury to the plaintiff. The instruction and the verdict sheet permitted the jury to find that Mr. Caruso was not liable for the plaintiff's leg amputation.

The relevant law was thoroughly discussed above in § A of this opinion. As previously discussed, it would have been improper to remove the issue of causation from the jury. The charge given by this court accurately explained the relevant law including the proposed standard charge 7.80.

C. There Was No Error in Allowing the Expert Testimony of Steven M. Schorr, P.E. on the Issue of

---

in his or her choice of language when charging the jury, provided that the judge fully and adequately conveys the applicable law." *Jeter v. Owens — Corning Fiberglas Corp.*, 716 A.2d 633, 635 (Pa. Super. 1998). The trial judge when instructing the jury does not need to follow jury charges recommended by counsel and may omit certain points of charge. No error occurs when the trial judge omits certain points of charge in the general charge provided that the general charge is sufficient to apprize the jury of the applicable law. *Salameh v. Spossey*, 731 A.2d 649, 659-660; *Strickler v. Huffine*, 421 Pa. Super. 463, 618 A.2d 430 (1992). A jury charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Stewart v. Motts*, 539 Pa. 596, 606, 654 A.2d 535, 540 citing *Voiyasefski v. Pittsburgh Rys. Co.*, 363 Pa. 220, 226, 69 A.2d 370, 373 (1949). A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. *Sweeney v. Bonafiglia*, 403 Pa. 217, 221, 169 A.2d 292, 293 (1961); *Giorgianni v. DiSanzo*, 392 Pa. 350, 356, 140 A.2d 802, 805 (1958).

Accident Reconstruction.

In his brief in support of his motion for post-trial relief, Mr. Caruso argued that this court erred when it permitted the plaintiffs accident reconstruction expert, Steven Schorr, P.E. to testify at trial. He argued that expert testimony was unnecessary because this case arose from a simple two car motor vehicle accident with witnesses who testified as to what occurred. Along these same lines, he argued that the average member of society possessed sufficient experience with motor vehicles, and motor vehicle accidents, to determine responsibility. In addition to arguing that expert testimony was unnecessary, the plaintiff also argued that Mr. Schorr improperly usurped the function of the jury when he offered his opinion on causation — that Mr. Caruso was a substantial contributing factor in the collision that resulted in injury to the plaintiff.

The expert testimony provided by Steven M. Shorr was clearly admissible. This court has presided over numerous cases arising from automobile accidents in which expert biomechanical or accident reconstruction testimony was offered to enable the jury to understand how and what occurred in an accident. The plaintiff suffered an extremely serious injury in this series of automobile accidents and was entitled to present expert testimony in support of his case.

Mr. Caruso's argument that Mr. Schorr offered improper testimony on the issue of causation contradicts the plain language of Pennsylvania Rule of Evidence 704 found in the chapter of the rules of evidence entitled opinions and

expert testimony. Pennsylvania Rule of Evidence 704 reads in relevant part, "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The question of whether an accident reconstruction expert can testify on the issue of causation has been squarely addressed by the appellate court system in Pennsylvania in the context of police officer testimony. It is well established law that "an investigating police officer who did not witness an accident may not render an opinion at trial as to its cause unless he or she has been qualified as an expert. *Smith v. Clark*, 411 Pa. 142, 190 A.2d 441 (1963); *Reed v. Hutchinson*, 331 Pa. Super. 404, 480 A.2d 1096 (1984); *Lesher v. Henning*, 302 Pa. Super. 508, 449 A.2d 32 (1982); *Anderson v. Russell*, 33 Pa. D. & C.3d 308 (1983). In *McManamon v. Washko*, 906 A.2d 1259 (Pa. Super. 2006), the court specifically held that a police officer who had not witnessed an accident, but was qualified as an accident reconstruct expert could render an opinion on causation. The Superior Court wrote, "[the officer was presented] as a qualified expert accident reconstructionist. His opinion on how the accident occurred encompassed what caused the accident. The testimony [elicited was] permissible as expert opinion." *Id.* at 1280. The general rule is that experts are not entitled to make credibility determination. *Kozak v. Struth*, 531 A.2d 420, 422 (Pa. 1987). However, Mr. Schorr did not attack Mr. Caruso's credibility or discount his version of the events. In reality, the key facts of this case were not really in dispute. The parties agreed that the accident arose from a rear end automobile accident on the Roosevelt

Boulevard.

In addition to attacking Mr. Schorr's ability to testify and his ability to testify on the issue of causation, Mr. Caruso piggybacked his argument that Mr. Schorr should not have been permitted to testify that Mr. Robertson was traveling at a high rate of speed but under 50 to 60 miles an hour at the time of this accident. Mr. Caruso argued that this testimony was particularly prejudicial because this court instructed the jury to disregard his own speed estimate that placed Mr. Robertson traveling around 50 to 60 miles an hour just prior to the accident. In his brief in support of his motion for post-trial relief, Mr. Caruso provided little legal or factual support for his erroneous argument. Nothing in the record suggested that Mr. Caruso was standing in an appropriate vantage point to adequately view and estimate the speed that Mr. Robertson was traveling just prior to the accident — an accident which occurred in the dark at 2:30 a.m. in the morning. Mr. Schorr, on the other hand, was a qualified expert who based his opinion on a thorough investigation of the accident. He openly admitted that Mr. Robertson was traveling at a high rate of speed, and, in that regard, he agreed with Mr. Caruso. However, he contradicted Mr. Caruso's stricken testimony that definitively placed Mr. Robertson traveling at 50 to 60 miles an hour. Since he was a qualified expert who conducted an investigation, his testimony was entirely appropriate on this matter.

D. This Court Committed No Error When It Declined to Rule as a Matter of Law that the Defendant, Shawn Robertson, Jr., Was Solely Responsible for Plaintiff's

injuries.

In the fourth section of Mr. Caruso's brief in support of his motion for post-trial relief, he argued that he was entitled to a new trial because this court should have held that the negligence of Mr. Robertson constituted an intervening superseding cause. He argued that this court should have ruled that Mr. Robertson was solely liable to the plaintiff for his negligent conduct that resulted in plaintiff's above-the-knee right leg amputation. While discussing his entitlement to a judgment in his favor based on intervening superseding cause, Mr. Caruso rehashed his argument that he should have been permitted to testify that Mr. Robertson was traveling between 50 — 60 miles an hour prior to the accident. This was the same argument that he piggybacked on to his discussion of alleged errors that occurred when plaintiff's accident reconstruction expert, Steven M. Schorr, was permitted to testify at trial. As previously discussed, nothing in the record supported Mr. Caruso's ability to definitively testify that Mr. Robertson was traveling at 50 to 60 miles an hour just prior to the accident.

Mr. Caruso is not entitled to a new trial based on this court's refusal to enter judgment in his favor on the issue of intervening superseding cause. As previously discussed in the first section of the discussion portion of this opinion (herein § A) to such an extent that it is not necessary to reiterate the law again, it is hornbook law that one is responsible for all of the consequences of his tort. Mr. Caruso placed the plaintiff in harm's way when he negligently struck the vehicle operated by Mr. Reikow

in the rear thereby disabling his own vehicle. Therefore, it was appropriate to allow the Jury to assess Mr. Caruso's responsible for the leg amputation ultimately suffered by the plaintiff. Regardless of the rate of speed that Mr. Robertson was traveling, this court would not have found that his actions constituted an intervening superseding cause as a matter of law thereby removing the question of causation from the Jury.

E. Mr. Caruso Was Not Entitled to a New Trial on Any Issue Averred In His Motion for Post-Trial Relief.

Mr. Caruso made a fatally flawed argument when he argued that he was entitled to a new trial on all issues. His argument was flawed because it assumed that a prejudicial error occurred at trial that was sufficient to gain the award of a new trial on at least one issue thereby assuming that this court erred when it denied his motion for post-trial relief. Simply put, Mr. Caruso was not entitled to a new trial on any issue.

F. The Weight of the Evidence Overwhelmingly Supported the Verdict in Plaintiff's Favor.

Mr. Caruso was not entitled to a new trial on weight of the evidence grounds because a new trial may be awarded based on the a jury's verdict being against the weight of the evidence only when the verdict is so contrary to the undisputed evidence as to shock one's sense of justice. *Davis v. Mullen*, 565 Pa. 386, 390,773 A.2d 764,766 (2001). The verdict must be so shocking as "to make the award of a new trial imperative, so that right may be given another opportunity to prevail." *Vattimo v. Eaborn Truck*

*Service*, 777 A.2d 1163, 1165 (Pa. Super. 2001).[4] The evidence supporting the verdict must be "so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice." *Rittenhouse v. Hanks*, 777 A.2d 1113, 1119 (Pa. Super. 2001). A litigant "is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way." *Fanning v. Davne*, 795 A.2d 388, 393 (Pa. Super. 2002). Nor should a new trial be granted simply because the trial judge, on the same facts, would have arrived at a different conclusion. *Davis*, 565 Pa. 386 (2001). Rather, it is axiomatic that questions of credibility are to be decided by the jury, which "is entitled to believe all, part, or none of the evidence presented." *Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.*, 797 A.2d 269, 279 (Pa. Super. 2002). A weight of the evidence challenge concedes that there was sufficient evidence to sustain the verdict, but asserts that the verdict was against the weight of the evidence. *Fanning v. Davne*, 795 A.2d 388, 393 (Pa. Super. 2002).

---

4. The Pennsylvania Supreme Court has written: "A new trial is warranted on weight of the evidence grounds only 'in truly extraordinary circumstances i.e., when the jury's verdict is 'so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.' *Armbruster v. Horowitz*, 572 Pa. 1, 813 A.2d 698, 703 (2002)... This court has also noted that one of the reasons that the power and duty to upset a verdict on weight grounds is so narrowly circumscribed is because of the obvious tension between the broad, settled, exclusive role of the fact-finder in assessing credibility and the limited power of trial judges, in narrowly circumscribed circumstances, to overturn those assessments when the judicial conscience is not merely disappointed, or uncomfortable, but shocked. *Id.* at 704." *Criswell v. King*, 575 Pa. 34, 834 A.2d 505 (2003).

The verdict was not against the weight of the plaintiff's evidence. The plaintiff presented evidence to establish that Mr. Caruso rendered his vehicle inoperable in the northbound lanes of the Roosevelt Boulevard after striking the rear of the vehicle operated by Mr. Reikow. The plaintiff, who was a passenger in the Carusos' vehicle, argued that this conduct placed him in harm's way and ultimately resulted in the amputation of his right leg. The jury accepted the plaintiff's argument. It assessed liability and awarded damages as it was entitled to do under applicable common law negligence theories.

G. This Court Did Not Err When It Denied the Motion for Remittitur Filed by Ryan Caruso.

The Superior Court has stated, "the granting or refusing of a motion for a new trial because of excessiveness is particularly within the discretion of a trial court and will not be interfered with by this court unless the record discloses a clear abuse of discretion." *Hawthorne v. Dravo Corp., Keystone Division*, 352 Pa. Super. 359, 376, 508 A.2d 298, 306 (1986) citing *Connolly v. Philadelphia Transportation Co.*, 420 Pa. 280, 287, 216 A.2d 60, 64 (1966). Remittitur is proper when "the verdict so shocks the sense of justice as to suggest the jury was influenced by partiality, prejudice, mistake or corruption." *Haines v. Raven Arms*, 536 Pa. 452, 620 A.2d 367 (1994). In *Haines*, the court wrote:

Judicial reduction of a jury ward is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls

within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. *Carminati v. Philadelphia Transportation Co.*, 405 Pa. 500, 509, 176 A.2d 440, 445 (1962)... In this area of law we begin with the well-recognized principle that the grant or refusal of a new trial [or remittitur] because of the excessiveness of the verdict is peculiarly within the discretion of the trial court and will not be reversed unless an abuse of discretion or an error of law has been committed. Recognizing the difficult task encountered by an appellate court in reviewing the record when a trial court merely assigns conclusory statements ["interest of justice," "shocks the court's conscience" and "substantial justice"] we have attempted to discourage this practice.

*Haines v. Raven Arms*, 536 Pa. 452,640 A.2d 367 (1994).

The Superior Court has explained that six factors are critical to the assessment of whether a jury verdict is excessive in the context of remittitur. The court has written:

In determining whether a verdict is excessive a court may consider the following factors: (1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of out-

of-pocket expenses; (6) the amount of compensation demanded in the original complaint.

*Harding v. Consolidation Rail Corp.*, 423 Pa. Super. 208, 226-227, 620 A.2d 1185, 1193-1194 (1993).

This court denied Mr. Caruso's motion for post-trial relief to the extent that it alleged that the jury verdict was excessive and necessitated remittitur because the ward of $19,145,904.17 simply was not excessive. The plaintiff was a young man who suffered an extremely painful above-the-knee amputation that will almost certainly cause complications in the future. He testified to continuous phantom pain and an inability to ambulate properly, which will continue to plague him for the remainder of his life, estimated at over forty years. Viewed from this perspective, the jury's award was not excessive. For this reason, remittitur was not appropriate.

## Conclusion:

For the above reasons, this court denied the motion for post-trial relief filed by the defendant, Ryan Caruso.