J-A14041-16

2016 PA Super 180

EDWARD R. KRISHACK,

              Appellant

        v.

MILTON HERSHEY SCHOOL,

              Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1408 MDA 2015

Appeal from the Order Entered July 23, 2015
in the Court of Common Pleas of Dauphin County
Civil Division at No.: 2013-CV-08243-CV

BEFORE:  BOWES, J., OTT, J., and PLATT, J.[*]

OPINION BY PLATT, J.:                **FILED AUGUST 15, 2016**

Appellant, Edward R. Krishack, appeals from the trial court's order granting summary judgment in favor of Appellee, Milton Hershey School (MHS), in this negligence action.  We affirm.

We take the following background from our review of the certified record.  From 1948 through 1953, Appellant resided at MHS, which provides free education and a home for children "from families of low income, limited resources, and social need[.]"  (Amended Complaint, 10/22/13, at unnumbered page 1).[1]  While Appellant was at MHS, the students lived in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant originally filed his action against MHS in Washington County on April 5, 2013.  However, the Washington County Court of Common Pleas
*(Footnote Continued Next Page)*

farm homes with house parents and, in addition to attending school, they performed farm chores, including putting up hay and cleaning the chicken coop. (*See id.* at unnumbered pages 3-5). The children did their chores in the mornings before school, and upon returning home after school. (*See* Official Handbook for MHS House Parents, at 37).

After leaving MHS in 1953, Appellant lived at an unrelated Pennsylvania farm for three weeks, where he also performed chores such as milking, and cleaning up after, cows. (*See* Appellant's Deposition, 6/27/13, at 21-22). Thereafter, Appellant lived with a foster family in Pennsylvania until his graduation from high school in 1955. (*See id.* at 23). After graduating, Appellant lived in Ohio, where he worked in construction performing general labor such as raking and shoveling dirt. (*See id.* at 24, 61). Appellant then lived in several locations throughout the United States before returning to Ohio, where he resided from 1961 through 2005. (*See* Appellant's Answers to Interrogatories, at 3-4). While in Ohio, Appellant purchased his first horse in 1969; and he owned and worked with horses at dirt race tracks, until 2005. (*See id.* at 8; Appellant's Deposition, at 41, 45, 51-52).

In 1998, Appellant sought treatment from pulmonologist, Dr. Randall Harris, for emphysema resulting from his "long-standing tobacco abuse."

*(Footnote Continued)* _____

transferred the case to Dauphin County on September 19, 2013, due to its lack of jurisdiction.

(Deposition of Dr. Randall Harris, 1/07/14, at 16-17). Appellant was sixty-one years old at the time, and had "an extensive smoking history[,]" which included smoking one-and-a-half packs a day for approximately forty years, beginning at the age of eighteen. (Dr. Harris Medical Record for Appellant, 7/13/98, at unnumbered page 1; **see also** Expert Report of Dr. David Laman, 9/11/14, at unnumbered page 1; Appellant's Deposition, at 142-44). While treating Appellant for emphysema, Dr. Harris diagnosed him with an old granuloma, or stable calcified deposit, detected on his lung in a 2001 x-ray. (**See** Deposition of Dr. Randall Harris, at 37-38). Dr. Harris noted that there were no symptoms associated with the stable calcified deposits, and that no treatment was necessary. (**See id.** at 38; **see also id.** at 41 ("It's stable. It's calcified. It's chronic.")). The calcified deposit resulted from a history of interstitial fibrosis, for which Dr. Harris did not know the cause. (**See id.** at 44).

Twelve years later, in 2013, Appellant filed a complaint against MHS alleging that he "suffers from old granulomatous [disease] consistent with old fungal-related histoplasmosis."[2] (Amended Complaint, at unnumbered

---

[2] *Histoplasma capsulatum* fungus causes histoplasmosis, which is commonly found in the major river valleys of the United States, including the Ohio River, and the eastern portion of the United States, including Pennsylvania. (**See** Affidavit of David Laman, M.D., 2/09/15, at 3; Expert Report of David F. Goldsmith, PhD, 9/01/14, at 4). The fungus grows well in soils that are high in nitrogen, and bird fecal matter can be a source for its growth. (**See** Expert Report of David F. Goldsmith, PhD, at 4). According to Dr. Harris,
*(Footnote Continued Next Page)*

page 5). Specifically, Appellant maintains that his exposure to "hay dust and farm related excreta" as a result of his performance of farm-related chores as an MHS student from 1948 until 1953, resulted in his old granulomatous disease. (*Id.* at unnumbered page 6; *see id.* at 5). Appellant filed an amended complaint on April 5, 2013. MHS filed an answer and new matter on November 4, 2013, and a motion for summary judgment on May 9, 2014. MHS argued that Appellant's complaint was barred by the statute of limitations. The court denied the motion on August 7, 2014.

Thereafter, the parties conducted extensive discovery that included interrogatories, depositions, and expert reports. On January 15, 2015, MHS filed a motion for summary judgment in which it maintained that "Appellant failed to provide any evidence that the fungus that causes histoplasmosis was ever present at [MHS], much less when he was a student." (MHS Brief, at 5) (citing MHS Motion for Summary Judgment, 1/15/15). The court heard argument on the motion on April 7, 2015, and granted it on July 23, 2015, on the basis advanced by MHS, that Appellant failed to present any evidence that the *Histoplasma capsulatum* fungus ever existed at MHS. (*See* Trial

*(Footnote Continued)* ————————

histoplasmosis is the leading cause of granulomatous disease in Ohio residents. (*See* Deposition of Dr. Harris, at 24).

Court Opinion, 7/28/15, at unnumbered pages 1, 4). Appellant timely appealed.[3]

Appellant presents two questions for the Court's review:

I.    Did the trial court err in granting [MHS's] summary judgment motion by disregarding the expert reports and affidavit, a part of the record evidence, which conclude the extreme exposures while at [MHS] resulted in Appellant experiencing symptoms which were a response to *H. capsulatum* fungus exposure thereby raising a genuine issue of material fact as to whether Appellant's exposures at [MHS] caused his pulmonary injury/illness?

II.    Did the trial court err when it determined that the opinions expressed in Appellant's experts' reports were not competent and were based on speculation and conjecture?

(Appellant's Brief, at 4) (unnecessary capitalization omitted).[4]

---

[3] Appellant filed a timely statement of errors complained on appeal on September 1, 2015, pursuant to the trial court's order. *See* Pa.R.A.P. 1925(b). The court filed an opinion on September 3, 2015, in which it relied on the reasons stated in its July 28, 2015 opinion. *See* Pa.R.A.P. 1925(a).

[4] Although Appellant alleges that he raises two questions for our review, we will address them together because they both challenge the trial court's decision to grant MHS's motion for summary judgment. In fact, in violation of Rule 2119(a), Appellant himself combines the two issues under the first heading in the argument section of his brief, "there is sufficient evidence in the record to raise a genuine issue of material fact as to whether [Appellant's] heavy and frequent exposures at [MHS] caused his injuries." (Appellant's Brief, at 15) (most capitalization omitted); *see also* Pa.R.A.P. 2119(a). Under the second heading in the argument section, Appellant factually distinguishes the cases relied upon by the trial court. (*See* Appellant's Brief, at 28-35). Even assuming *arguendo* that some of the cases relied upon by the trial court were factually distinguishable, as we discuss in the body of this decision, the trial court properly found that summary judgment was appropriate for Appellant's failure to establish a genuine issue of material fact regarding proximate causation.

Our standard of review is well-settled:

> Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> *      *      *
>
> . . . [F]ailure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

***Rodriguez v. Kravco Simon Co.***, 111 A.3d 1191, 1193 (Pa. Super. 2015) (citation omitted).

In this case, Appellant maintains that the trial court improperly entered summary judgment because it "erred in determining that Dr. Laman's opinion is based on mere speculation and conjecture[]" where he employed "simple deductive reasoning to opine that [Appellant] contracted histoplasmosis while at [MHS.]" (Appellant's Brief, at 15, 18). We disagree.

This Court has long-observed that:

> To prove their negligence claim, [p]laintiffs[] [are] required to establish: a legally recognized duty or obligation owed them by [defendant]; a breach of that duty; a causal connection between the breach of duty and the resulting injury; and actual loss or damage suffered by plaintiffs. Even with proof of both breach of duty as prescribed under statute and the occurrence of injury, therefore, [plaintiffs are] still obligated to show the two were linked by causation.

- 6 -

To prove causation, a demonstration that the breach of duty was both the proximate cause and actual cause of injury [is] required. It is not sufficient . . . that a negligent act may be viewed, in retrospect, to have been one of the happenings in the series of events leading up to an injury. Even if the requirement of actual causation has been satisfied, there remains the issue of proximate or legal cause. . . .

Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm. A determination of proximate or legal causation therefore essentially regards whether the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm.

*Eckroth v. Penn. Elec., Inc.*, 12 A.3d 422, 427-28 (Pa. Super. 2010), *appeal denied*, 21 A.3d 678 (Pa. 2011) (citations and quotation marks omitted). Further:

A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor. A jury is not permitted to find that it was a defendant's [negligence] that caused the plaintiff's injury based solely upon speculation and conjecture; there must be evidence upon which logically its conclusion must be based. In fact, the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation. Additionally, a party is not entitled to an inference of fact that amounts merely to a guess or conjecture.

*Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 568 (Pa. Super. 2014) (citations and quotation marks omitted).

In the case before us, the trial court observed:

[Appellant] asserts that, at MHS, he was required to work in a commercial farming environment where he was exposed to extreme amounts of dangerous agriculture-related dust and particulates without respiratory protection. . . .

- 7 -

\* \* \*

. . . [Appellant] presents reports of experts, namely David Laman, M.D., who is a board certified pulmonologist and David F. Goldsmith MSPH, PhD, who is an occupational and environmental epidemiologist. These reports adequately opine to a reasonable degree of certainty that histoplasmosis is caused by exposure to *H. capsulatum* soil fungus. Furthermore, both of these experts opine to a reasonable degree of certainty that the H. capsulatum soil fungus can be found with and among bird feces, especially in chicken coops.

Expert testimony is incompetent if it lacks an adequate basis in fact. [*See*] ***Gillingham v. Consol Energy, Inc.***,[] 51 A.3d 841, 849 ([Pa. Super.] 2012)[, *appeal denied*, 75 A.3d 1282 (Pa. 2013)]. An opinion based on mere possibilities, conjecture or surmise is, therefore, not competent. [***See i***]***d.*** The expert's assumptions must be based upon facts that the jury would be warranted in finding from the evidence. [***See i***]***d.***

According to [Appellant's] experts' reports, Histoplasmosis is only caused by exposure to *H. capsulatum* fungus. The missing link is that [Appellant] has not shown that the *H. capsulatum* fungus was present at MHS when [he] was at the school or even that this particular fungus was ever present at the school. Neither Dr. Laman nor Dr. Goldsmith have provided any factual basis for their assertions that *H. capsulatium* fungus was present at MHS while [Appellant] was attending and performing farm chores or at any other time. Rather, both experts make a speculative assumption that the fungus must have been present at MHS while [Appellant] resided there because [he] developed histoplasmosis. Dr. Laman opines that chicken coops have been identified as a source of the *H. capsulatum* fungus, but does not opine that this fungus is present in all chicken coops, or even that it is present in the majority of chicken coops. Neither expert performed any tests of the soil at MHS. Additionally, [Appellant] has not identified any other person or persons with whom [he] attended MHS who has developed histoplasmosis. If this case were to go to a jury, the jury would have no factual evidence upon which to find that [Appellant's] histoplasmosis was caused by his work at [] MHS. Thus, the jury would be asked to make a decision based upon mere conjecture and speculation that the fungus must have existed there because [Appellant] developed histoplasmosis

approximately sixty years after he was no longer performing farm chores at MHS. This type of conjecture is insufficient to allow a jury to decide [Appellant's] claims.

(Trial Ct. Op., at unnumbered pages 2-4). We agree with the trial court that Appellant failed to prove proximate causation. *See Eckroth*, *supra* at 427-28.

Additionally, we are not legally persuaded by Appellant's argument that Dr. Laman's use of "simple deductive reasoning," and logic, established that he "developed histoplasmosis while at [MHS]." (Appellant's Brief, at 15; *see id.* at 16-28). Specifically, Appellant claims that "Dr. Laman relied upon his professional experience which includes a [forty-plus] year career in the field of respiratory/pulmonary medicine and familiarity with, and working knowledge of, a wide array of relevant literature in the field." (*Id.* at 18) (record citation omitted). This argument is not compelling.

The evidence in this case is that Appellant was a student at MHS for approximately five years, from 1948 to 1953, during which time he performed farm chores before and after school that included baling hay and cleaning out a chicken coop. (*See* Amended Complaint, at 1, 4-5); (Official Handbook for MHS House Parents, at 37). Over the approximately sixty years' since that time, Appellant has performed similar tasks at other farms, worked construction as a general laborer, which required the raking and shoveling of soil, and owned horses that he trained at a dirt track. (*See* Appellant's Deposition, at 21-22, 41, 45, 51-52, 61); (Appellant's Answers to

Interrogatories, at 3-4, 8). For the majority of those sixty years, Appellant lived throughout Ohio and Pennsylvania, both of which are known to have soil containing *H. capsulatum* fungus. (***See*** Affidavit of David Laman, M.D., at 3; Expert Report of David F. Goldsmith, PhD, at 4). *H. capsulatum*, which can be found in the soil of a chicken coop, causes histoplasmosis, but there was no evidence that the fungus is in all chicken coops or that it was present at MHS at any time. (***See*** Affidavit of David Laman, M.D., at 3; Expert Report of David F. Goldsmith, PhD, at 4; Deposition of Dr. Harris, at 24).

In 2001, while undergoing therapy for emphysema caused by approximately forty years of heavy smoking, Appellant was diagnosed with unrelated old granulomatous disease, or calcified deposits on his lungs. (***See*** Dr. Harris Medical Record for Appellant, at unnumbered page 1; Deposition of Dr. Harris, at 37-38; Expert Report of Dr. Laman, at unnumbered page 1). Dr. Harris, Appellant's treating pulmonologist, could not say that histoplasmosis resulted in the old granulomatous disease. (***See*** Deposition of Dr. Harris, at 42-44).

Based on these facts, Dr. Laman's opinion that, because Appellant had histoplasmosis at some unidentified point in his life, the soil at MHS over sixty years ago must have contained *H. capsulatum*, and that this caused his old granulomatous disease, requires more than "simple deductive reasoning," but instead required impermissible "speculation and conjecture." ***Krauss***, ***supra*** at 568; (Appellant's Brief, at 15). Even assuming *arguendo*,

that Appellant established genuine issues of material fact about whether MHS breached a duty to him by failing to provide him with respiratory protection, and that such beach resulted in damages,[5] Appellant utterly failed to prove proximate causation. **See Eckroth**, **supra** at 427-28. Therefore, we conclude that the trial court properly granted the motion for summary judgment of MHS. **See Rodriguez**, **supra** at 1193.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2016

---

[5] Because the trial court granted the motion for summary judgment on the basis of Appellant's inability to establish proximate causation, we do not address the other factors necessary for a negligence claim. **See Eckroth**, **supra** at 427-28.