J-A01016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHAEL J. LATTARI ADMINISTRATOR OF THE ESTATE OF NICHOLAS L. LATTARI, SR., DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| 3180 MJT CORP., D/B/A ALBERT'S CAFÉ, | |
| Appellee | No. 959 EDA 2017 |

Appeal from the Order September 9, 2016,
as made final by the Order of March 10, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: 140900773

BEFORE:  LAZARUS, J., OTT, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    **FILED MAY 04, 2018**

Appellant, Michael J. Lattari as administrator of the estate of Nicholas L. Lattari, Sr., appeals from the order of September 9, 2016, as made final by the order of March 10, 2017, which granted the motion of Appellee, 3180 MJT Corp., d/b/a Albert's Café, for summary judgment in this premises liability action.[1]  For the reasons discussed below, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] On April 25, 2014, the parties stipulated to the removal of defendant Indiana Lumberman's Mutual Insurance Company from the action.  Thus, it is not a party to this appeal.

We take the underlying facts and procedural history in this matter from the trial court's August 17, 2017 opinion and our independent review of the certified record.

On February 16, 2013, Nicholas L. Lattari, Sr. (["decedent"]) was working as a disc jockey at 3180 MJT Corp., d/b/a Albert's Café ("Albert's Café"). [Decedent] was then a 76-year-old man with a medical history of myocardial infarction, hypertension, and percutaneous transluminal coronary intervention.

Prior to starting his work, [decedent] walked to the kitchen of Albert's Café and asked Cesar Lopez, a maintenance worker, to help him move his DJ equipment. Lopez directed [decedent] to a storage room on the first floor, which contained a mobile lift. Lopez then directed [decedent] to load his DJ equipment onto the lift and then to send the lift to the second floor. Lopez ascended the steps to the second floor with [decedent], helped him remove his DJ equipment, and descended the steps to the first floor with him. Lopez removed the key from the lift's ignition and left the lift in a raised position. The lift would not operate or move without the key. Lopez left [decedent] and did not see him again.

At some time later, [decedent] fell and struck his head, which resulted in a fracture of his skull. No one witnessed [decedent's] fall or how he injured himself. The evidence of record is replete with varying statements attributed to [decedent] as to how he fell. **See**, **e.g.**, Ex. "I", EMS Report ("Pt. stated he was on an electric lift and jumped off and felt a jolt."); Ex. "J", Pulmonary Consult Note ("fell down 4 steps"); Ex. "K", Trauma History Note at 1 ("fell 4 steps, doesn't remember what happened"); Ex. "L", Aria Trauma Record at 4 ("fall 4 steps"); Ex. "M", ER Note at 5 ("brought in . . . after falling off 4-5 ft. lift"); and Ex. "Q", Kindred Hospital Note ("A piece of sound equipment fell on him.").[a]

[a] For purposes of deciding [Appellee's] motion for summary judgment, the trial court assumed that [decedent's] statements to [his girlfriend, Elizabeth] Bodkin were excited utterances under Pa.R.E. 803(2), and that [decedent's] statements in the medical records were statements made for medical treatment pursuant to Pa.R.E. 803(4).

After [decedent's] fall, waitress Peggy Miller discovered [him] sitting in a booth. Miller noticed that [decedent] did not seem well and called his girlfriend, Elizabeth Bodkin, who came to Albert's Café and called 911. [Decedent] stated to Bodkin that he fell from the lift.

[Decedent] was taken from Albert's Café to the Emergency Department at Aria Hospital-Torresdale by the Philadelphia Fire Department's Emergency Medical Service. At Aria Hospital, Bodkin noticed that the insides of [decedent's] shoes were "gritty and wet." [Decedent] underwent an emergency craniotomy due to the extensive hemorrhaging and swelling inside his skull. [Decedent] did not regain consciousness after the craniotomy and was placed on a ventilator. [Decedent] remained unconscious and on the ventilator until April 14, 2013, when he passed away.

As explained earlier, no one witnessed [decedent's] fall or how he injured himself. There is also no direct evidence as to (1) the condition of the lift at the time he fell, (2) when [his] shoes became wet, *i.e.*, before or after he fell, (3) how [his] shoes became wet, and (4) what was the source of water that made [his] shoes wet, *i.e.*, was it from rain outside Albert's Café or was it from water that accumulated somewhere inside Albert's Café.

In opposition to [Appellee's] motion for summary judgment, [Appellant] submitted an expert report prepared by Richard A. Kennedy & Associates. In that report, [Appellant's] expert opined that [Appellee] had routinely used the mobile lift to move material from the first floor to the second floor. The expert could not find any evidence that [Appellee] performed any maintenance on the lift after purchasing it in 2007.

Among other things, [Appellant's] expert opined that:

• [Appellee's] operation and maintenance of the lift deviated from the recommended standards of care set forth in the lift's operation and safety manual.

• [Appellee] operated the lift in an unsafe work area with debris on the floor, with unsafe clearances around the lift, and under the supervision of untrained individuals.

- 3 -

- [Appellee] maintained the lift so that its platform was not level and its platform was damaged. The lift also lacked stabilizer outriggers, a working tilt-warning system, and guardrails.

- A puddle of water surrounded the lift at the time of the fall.

[Appellant's] expert did not offer any opinion as to the cause of [the decedent's] fall, *i.e.*, the deviation from the standard of care in the operation and maintenance of the lift, the unsafe operation of the lift, water surrounding the lift, or the lack of safety equipment on the lift. Instead, [Appellant's] expert simply concluded had the "lift been used in the responsible recommended manner, in proper operating condition, and with the necessary operator training, this incident would not have happened."

Notably, [Appellant's] expert was not qualified as an expert on the slipperiness of surfaces including the lift, water or leather shoes and did not offer any expert opinions thereon including the degree of slipperiness and the coefficient of friction.

(Trial Court Opinion, 8/17/17, at 1-4) (some record citations and subheadings omitted).

On September 5, 2014, Appellant commenced the instant action. Thereafter, Appellee filed an answer. Appellant settled the action with co-defendant Mobile Lifts, Incorporated. On August 1, 2016, Appellee filed a motion for summary judgment. Appellant filed an answer on August 31, 2016. The trial court granted Appellee's motion on September 9, 2016. On September 19, 2016, Appellant filed a motion for reconsideration and a notice of appeal. On October 19, 2016, the trial court denied the motion for reconsideration and, in a separate order, directed Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On

November 2, 2016, the trial court issued an order deeming the September 9, 2016 order to be a final order. On November 8, 2016, Appellant filed a timely Rule 1925(b) statement. *See id.* On March 10, 2017, the trial court issued an order approving the settlement between Appellant and Mobile Lifts, Inc., which dismissed all remaining parties except Appellee. On March 13, 2017, Appellant filed a timely notice of appeal. On August 17, 2017, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review.

> 1. Did the [t]rial [c]ourt err as a matter of law in granting summary judgment to [Appellee] in a premises liability action, when it weighed the evidence, served as a fact finder, and held that there was insufficient circumstantial evidence to conclude a puddling condition surrounding a scissor lift, which the [d]ecedent would have had to walk through to access the lift, was a substantial factor in causing his fall from the lift which lead (sic) to his death?
>
> 2. Did the [t]rial [c]ourt err as a matter of law in granting summary judgment to [Appellee] in a premises liability action, holding [Appellee's] (who admitted having no knowledge of the proper methods to use this dangerous scissor lift) failure to warn, train, or restrict the [decedent] from accessing the lift was [not] a substantial factor in causing the [d]ecedent's fall from the lift which lead (sic) to his death?
>
> 3. Did the [t]rial [c]ourt err as a matter of law in granting summary judgment to [Appellee] in a premises liability action when it held [Appellant's] expert did not express a factually sufficient opinion on causation because he did not cite to any violations of the product manual as being a cause of the [d]ecedent's fall from the lift which caused his death, when in fact [Appellant's] expert did express that very opinion?

(Appellant's Brief, at 5-6).

In each of the issues on appeal, Appellant challenges the trial court's grant of summary judgment. We note our standard of review.

> Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the fact-finder. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Dibish v. Ameriprise Financial, Inc.*, 134 A.3d 1079, 1084-85 (Pa. Super. 2016), *appeal denied*, 141 A.3d 481 (Pa. 2016) (citation omitted). We have long stated:

> To prove their negligence claim, [p]laintiffs[ ] [are] required to establish: a legally recognized duty or obligation owed them by [defendant]; a breach of that duty; a causal connection between the breach of duty and the resulting injury; and actual loss or damage suffered by plaintiffs. Even with proof of both breach of duty as prescribed under statute and the occurrence of injury, therefore, [plaintiffs are] still obligated to show the two were linked by causation.
>
> To prove causation, a demonstration that the breach of duty was both the proximate cause and

actual cause of injury [is] required. It is not sufficient . . . that a negligent act may be viewed, in retrospect, to have been one of the happenings in the series of events leading up to an injury. Even if the requirement of actual causation has been satisfied, there remains the issue of proximate or legal cause. . . .

Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiffs harm. A determination of proximate or legal causation therefore essentially regards whether the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm.

Further:

A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor. A jury is not permitted to find that it was a defendant's [negligence] that caused the plaintiff's injury based solely upon speculation and conjecture; there must be evidence upon which logically its conclusion must be based. In fact, the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation. Additionally, a party is not entitled to an inference of fact that amounts merely to a guess or conjecture.

*Krishack v. Milton Hershey School*, 145 A.3d 762, 765-66 (Pa. Super. 2016) (citations omitted).

In his first claim, Appellant contends that the trial court improperly weighed the evidence and found it insufficient to show that the decedent slipped and fell from the lift because of standing water surrounding the lift. (*See* Appellant's Brief, at 21-34). Specifically, Appellant contends "it is not only a reasonable inference that the [d]ecedent slipped as a result of the large

puddle of water on the floor, in which the scissor lift fell from sat directly in (sic), but the only conclusion that can be based upon any evidence in the record." (**Id.** at 27). We disagree.

Initially, we note that for purposes of summary judgment, the trial court assumed that Appellee owed a legal duty to the decedent, it breached that duty, and that the decedent suffered actual damages from his injuries. (**See** Trial Ct. Op., at 9). However, the trial court found that Appellant had not established that any alleged negligence by Appellee caused the fall. (**See id.**). The trial court aptly discussed the evidence and its reasoning as follows:

> [Appellant] argues that genuine issues of material fact existed regarding whether [Appellee's] negligence caused [the decedent's] fall because [Appellee]: (1) allowed a puddle of water to form around the lift, (2) used the lift as a means of transporting material from the first floor to the second floor, (3) misused the lift for an improper purpose, (4) failed to restrict [the decedent's] access to the lift, (5) failed to warn [decedent] about the dangerousness of the lift, and (6) failed to provide proper instructions or training to [decedent] in the safe use of the lift.
>
> In the absence of direct evidence, however, none of these instances of negligence may properly be found by a jury to reasonably infer that [Appellee's] negligence caused [the decedent's] fall because none so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith. . . . there are no witnesses who can testify why or how [the decedent] fell, or how or when his shoes became wet. There are also no witnesses who can testify that [decedent] was actually using or misusing the lift when he fell.
>
> Equally important, . . . the evidence of record is at least equally consistent with theories of the case that attribute [decedent's] fall to other, non-negligent causes. For example, it is reasonable to infer that [decedent] could have fallen from the lift because he tripped or stumbled on his own accord. Or, he

could have fallen because of his significant medical conditions, advanced age, or possible consumption of alcohol. Thus, the trial court properly determined that the evidence and reasonable inferences of negligence cited by [Appellant] do not so preponderate or outweigh the evidence and reasonable inferences that [Appellee's] negligence did not cause [the decedent's] fall. As a result, summary judgment was appropriate because — in the absence of direct evidence — [Appellant's] theory of [Appellee's] liability rests on impermissible speculation, conjecture, or a mere guess as to the cause of [the decedent's] fall.

(*Id.* at 9-10) (citations, quotation marks, and record citations omitted).

Having thoroughly reviewed the record, we agree. No one witnessed the decedent fall. The only person who ever even saw the decedent in proximity to the lift was restaurant employee Cesar Lopez. Mr. Lopez's uncontradicted testimony at two separate depositions was: (1) you needed a key to operate the lift; (2) on the evening in question he and the decedent loaded equipment on to the lift and sent it upstairs; (3) they walked up the stairs and unloaded the equipment; and (4) Mr. Lopez left the lift on the second floor, took and retained possession of the key and the two walked down the stairs and parted. (*See* Depositions of Cesar Lopez, 5/19/15, at 20, 30; 4/26/16, at 26-27). The decedent's girlfriend, Elizabeth Bodkin, who was not present during the incident, alternately testified that the decedent told her he fell in the water and that he slipped off the lift while loading his equipment on it. (*See* Depositions of Elizabeth Bodkin, 4/13/15, at 37; 1/28/16, at 53, 56-57). She admitted that, she did not know what caused him to slip on the lift, but stated the area around it was wet. (*See id.* at 37; 60-61). Moreover, as discussed above, the decedent gave varying explanations of what occurred

- 9 -

to medical personnel. Appellant fails to point to, and we have been unable to locate, any evidence that the decedent ever told anyone that the lift itself had water on it or that the standing water on the floor caused his fall as he was getting off the lift. In fact, there is no direct evidence that Appellant was ever on the lift except when in the presence of Cesar Lopez.

In **Farnese v. SEPTA**, 487 A.2d 887 (Pa. Super. 1985), a passenger in a SEPTA bus was injured while the bus was traveling over a City of Philadelphia construction zone and he was jolted from his seat. **See Farnese**, **supra** at 889. The passenger sued SEPTA, which joined the City as an additional defendant. **See id.** The trial court granted the City's motion for a directed verdict finding SEPTA had failed to show a causal connection between the road conditions and the passenger's injury. **See id.** We affirmed, stating:

> The real issue in this case is how much and what kind of circumstantial evidence is sufficient to raise not only the inference of negligence on the part of the City but also to raise the inference of a causal connection between the City's negligence and the injury which occurred. To prove possibility only or to leave the issue to surmise or conjecture is never sufficient to sustain a verdict. Where there is no evidence of or the evidence is insufficient to justify an inference of negligence and causation, the court will direct a verdict in favor or the party against whom liability is sought.
>
> We agree with the court below that, as a matter of law, SEPTA failed to offer evidence which was sufficient to raise an inference that the negligence of the City was the proximate cause of the injuries incurred by plaintiff. While we acknowledge that questions of negligence and causation are to be resolved by the jury, and not the judge, the question of the sufficiency of the evidence before presenting a question to the jury is clearly within the discretion of the trial judge. In fact, the trial court has a duty to prevent questions from going to the jury which would require it

- 10 -

to reach a verdict based on conjecture, surmise, guess or speculation.

\* \* \*

SEPTA offered no specific evidence as to the cause of the jolt. It did not offer its driver as a witness in an attempt to pin point the site of the accident or the specific cause. The general evidence in the record is clearly insufficient to shift the burden of proof to the defendant, City of Philadelphia . . . . [w]ith such lack of specificity, there is no basis upon which the City could rebut SEPTA's claim. A basic rule of due process is that a plaintiff must set forth a *prima facie* case with sufficient specificity so that the defendant is put on notice as to that against which it must defend. . . .

*Id.* at 889-90 (citations omitted).

The holding in **Farnese** is in line with that of an earlier Pennsylvania Supreme Court decision, **Houston v. Republican Athletic Ass'n.**, 22 A.2d 715 (Pa. 1941). In **Houston**, a man died after falling down stairs at an athletic club, no one witnessed the fall but his widow sued, claiming that a splinter of wood on the edge of one of the steps caught the decedent's foot, causing the fall. **See Houston**, **supra** at 715. At the close of the plaintiff's case, the trial court entered a compulsory nonsuit. **See id.** at 715-16. Our Supreme Court affirmed stating:

In the absence of any direct proof as to the manner in which the accident occurred, **the burden was on appellant to produce evidence of circumstances so strong as to preclude the possibility of injury in any other way, and provide as the only reasonable inference the conclusion that her husband's death was caused by the negligence of appellees in the manner alleged.** Proving that an accident happened, or the existence of an opportunity for it to happen, in the manner alleged, is entirely insufficient to establish negligence. Plaintiff must go further, and show not only defendant's negligence, but

- 11 -

that the injuries complained of were the result of such negligence. While it may be that appellant's hypothesis as to the cause of this regrettable accident is a plausible one, for all that appears from the evidence, the circumstances relied upon are at least equally consistent with theories of the case attributing the accident to a variety of causes, not excluded by the evidence, for none of which any of appellees could conceivably be held liable, as the court below has pointed out, including the possibility that the deceased may simply have tripped or stumbled, without such tripping or stumbling having any connection whatever with the defects in the steps complained of. Under these circumstances, a finding that the fatal injuries of appellant's husband resulted from the negligence alleged would, at most, represent nothing but a mere guess or conjecture; hence a verdict for appellant could not be sustained. Where a defendant is liable for only one of two or more equally probable causes and to say which is a mere guess, there can be no recovery.

*Id.* at 716 (citations and quotation marks omitted, emphasis added).

We see nothing in the instant matter to differentiate it from either **Farnese** or **Houston**. Appellant hypothesizes that the decedent fell from the lift and that the standing water around the lift caused this alleged fall. (**See** Appellant's Brief, at 21). There is no direct evidence to support this contention, and the circumstantial evidence, including the decedent's various hearsay statements and the evidence of his wet pants and shoes, as well as the description of the room in question, "are at least equally consistent with theories of the case attributing the accident to a variety of causes[.]" **Houston**, **supra** at 716; **see also Farnese**, **supra** at 889-90. Appellant's first claim lacks merit.

In his second contention, Appellant argues that the trial court erred in failing to consider Appellant's alternate theory of liability, "that [Appellee's]

- 12 -

failure to warn [the decedent] of the dangers of using the lift, or train, instruct, or restrict the decedent's use of the lift was a substantial factor in causing [the incident]." (Appellant's Brief, at 34 (unnecessary capitalization omitted); *see generally id.* at 34-41). We disagree.

We have thoroughly reviewed Appellant's argument on this issue, and it suffers from a fatal flaw. It is completely based on the unsupported assumption that the decedent fell off the lift. (*See id.* at 34-41). As discussed in detail above, the record is simply devoid of direct evidence of this. Moreover, in order to support this contention, Appellant cherry picks through the deposition testimony of Cesar Lopez regarding training and warnings about the lift. (*See id.* at 38-39). Appellant neglects to discuss Lopez's testimony that he and the decedent loaded and unloaded the lift without incident, never rode on the lift, that the lift could not be operated without a key, and that Lopez retained possession of the key after they were done unloading the decedent's equipment. (*See* Depositions of Cesar Lopez, 5/19/15, at 20, 30; 4/26/16, at 26-27).

In *Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles*, 223 A.2d 742, 743 (Pa. 1966), the plaintiff fell on the premises of a lodge and contended that inadequate lighting was the proximate cause of the fall. *See Watkins*, *supra* at 743. The trial court granted a compulsory nonsuit; on appeal, our Supreme Court affirmed, stating:

> [s]he may have slipped or lost her balance through no fault of the defendant, or she may have tripped over her own foot, or she may

- 13 -

have become dizzy. In any event, plaintiffs failed to prove the proximate cause of her injury, *i.e.*, she failed to prove that her fall and injury was due to some particular negligence of the defendant-what caused her to fall could only be a guess, and that is not sufficient to take a case to the jury.

*Id.* at 745 (citations omitted).

Here, Appellant has only guessed at what caused the decedent's fall, thus, there is simply insufficient evidence of proximate cause to support his theory of failure to warn/train. The trial court did not err in granting summary judgment, because Appellant's second claim lacks merit. ***See id.*** at 45; ***see also Fedorczyk v. Caribbean Cruise Lines***, 82 F.3d 69, 75-76 (3d Cir. 1996) (affirming grant of summary judgment where plaintiff could not provide direct evidence of proximate cause of injury stating case cannot go to trial where jury would have to speculate about cause of injury).[2]

In his final claim, Appellant maintains that the trial court's conclusion that his expert's opinion "lacked a basis in fact for his conclusions that [Appellee's] actions caused the [d]ecedent's fall[,]" was in error. (Appellant's Brief, at 42; ***see generally id.*** at 42-46). We disagree.

The trial court discussed this issue as follows:

The Pennsylvania Rules of Evidence prescribe a threshold for admission of expert testimony. Pa.R.E. 703. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the

---

[2] "While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason." ***Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh***, 771 A.2d 39, 43 (Pa. Super. 2001) (citation omitted).

expert at or before the hearing." ***Id.*** "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." ***Id.*** The opinion of an expert witness is incompetent as evidence if it lacks an adequate basis in fact. [***See***] ***Gillingham v. Consol Energy, Inc.***, 51 A.3d 841, 849 (Pa. Super. [] 2012)[, *appeal denied*, 75 A.3d 1282 (Pa. 2013)]. An adequate basis in fact must enable the expert to opine with a reasonable degree of certainty. [***See id.***] Possibilities that facts were as the expert assumes cannot enable him to opine with a reasonable degree of certainty. [***See id.***]

Here, [Appellant's] expert's opinion was incompetent to establish causation because it lacked an adequate basis in fact because the expert could not have formed his opinion with a reasonable degree of certainty. In short, [Appellant's] expert relied on assumptions or mere possibilities that have no basis in fact. Specifically, there is no testimony or other evidence that [the decedent] fell as a result of any of [Appellee's] conduct including the maintenance and operation of the lift in a manner that deviated from the standards of care set forth in the lift's operation and safety manual. Instead, the expert baldly assumes that [Appellee's] conduct caused [the decedent's] fall without eliminating the many non-negligent reasons for [his] fall. Because his opinion is unsupported by any facts of record, it cannot serve as the basis to prove causation.

(Trial Ct. Op., at 11-12) (footnotes omitted). We agree.

In ***Krishack***, ***supra***, the plaintiff attended the Milton Hershey School in the later 1940s through the early 1950s. ***See Krishack***, ***supra*** at 763. In 2001, a doctor diagnosed the plaintiff as having asymptomatic calcifications in his lung, for which he required no treatment. ***See id.*** at 764. In 2013, the plaintiff filed suit against the school claiming that his exposure to hay dust and farm-related excrement while performing chores at the school caused the lung disease resulting in the calcification. ***See id.*** The trial court granted

summary judgment, finding that the plaintiff had failed to prove that the fungus that can cause the disease was ever present at the school. *See id.*

On appeal, this Court affirmed, agreeing with the trial court that the appellant failed to prove proximate cause. *See id.* at 767. We found that while the appellant provided expert reports, those expert reports assumed, without evidence, that because the appellant had the disease that caused the calcifications at some point in his life, the soil at the school must have been contaminated. *See id.* We stated that the expert report was insufficient to demonstrate proximate causation because it required, "more than simple deductive reasoning, but instead required impermissible speculation and conjecture." *Id.* (citation and internal quotation marks omitted). Therefore, we affirmed the grant of summary judgment. *See id.* at 768.

We have reviewed the record and see nothing to differentiate this matter from *Krishack*. Here, Appellant's expert simply speculated, without evidence, that the decedent fell from the lift, and that the alleged fall was caused by the decedent's failure to maintain, properly train, or warn. Thus, it is not competent to prove causation. *See id.* at 768. Appellant's third claim lacks merit.

Accordingly, for the reasons discussed above, we find that the trial court did not err in granting summary judgment in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/4/18