J-S32007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROCIO BARRIOS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GIANT FOOD STORES, LLC | : | No. 83 MDA 2018 |

Appeal from the Order Entered December 14, 2017
In the Court of Common Pleas of Franklin County
Civil Division at No(s):  2015-137

BEFORE:   PANELLA, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 12, 2018**

Appellant, Rocio Barrios, challenges the order entered in this slip and fall case in the Franklin County Court of Common Pleas, granting the motion for summary judgment filed by Appellee, Giant Food Stores, LLC ("Giant"). We affirm.

The relevant facts and procedural history of this case were recounted by the trial court as follows:

> [Appellant] alleges that on June 8, 2011, she was at a Giant Store in Chambersburg, when she slipped and fell on a water substance. [Appellant] claims that she believed she slipped on water because when she got up, her hands were wet. [Appellant] did not see this substance before falling on it because it was transparent, and does not recall how much of the wet substance may have been on the floor. Giant manager at the time, Daron L. Furman stated that he saw clear liquid in the area the size of an orange along with a few drops of water. It appeared to Furman that someone had a bag of ice in their cart, which may have dripped water on the floor.

_____

* Retired Senior Judge assigned to the Superior Court.

According to [Appellant], she was wearing sandals on the date of the incident, but does not remember what specific type of sandals. Giant employee Amy Haupt claims [Appellant] was wearing flip flops at the time.

Although there is video of the incident, it has not been made part of the record by either party. However, it is frequently referenced by witnesses and both parties' counsel in the deposition portions filed of record. At 11:42:25 a.m. on the date of the incident, the meat manager Ed Reed was straightening up the meat case or checking it for codes. According to clean sweep scanning records, at 11:52:09 a.m., Giant employee Amy Haupt performed a clean sweep on one end of the meat aisle. However, Haupt's scanning of this end of the meat aisle is not visible at this time mark on the surveillance tape; the only explanation provided by Giant for this discrepancy is that the surveillance video may be off in time. [Appellant] fell in the [meat] aisle at 11:57:35 a.m. according to the available surveillance footage. [Appellant] can be seen approaching Haupt to inform her about her fall at 11:58:30 a.m. in the surveillance video. At 12:00:55 p.m., Haupt and fellow Giant employee Stephen Washabaugh are seen on surveillance camera explaining to Furman that [Appellant] had slipped and fallen in the meat aisle. At 12:01:34. Washabaugh checked the floor where [Appellant] allegedly fell, but he did not see or pick up anything.

Giant employees conduct hourly clean sweeps of the store with a cart to inspect the aisles for any dangerous conditions. The cart contains supplies to clean up messes, including a trash can, broom, and safety cone for spills. It would be difficult to see water on the store's white floor when the ceiling lights are reflecting on it. On the date of the incident, Furman, stated that a clean sweep of the meat area where the accident occurred was completed by an employee named Nicole. However, Haupt confirmed that although Nicole was listed in the clean sweep report, Haupt actually performed the clean sweep on the date in question. Haupt had scanned one end of the meat aisle, and was walking up and down the aisles perpendicular to the meat aisle to eventually reach the other end of the meat aisle. During this two or three minutes between Haupt scanning the first end of the meat aisle and eventually reaching the other end of the meat aisle, [Appellant] slipped and fell near the end of the meat aisle that Haupt had not yet reached. Haupt had not walked, but merely looked from the one end of the meat aisle down to the other end shortly before

[Appellant] fell. Haupt describes her actions as looking down a hallway with [Appellant] falling about twenty or thirty feet away from where she was standing. When Haupt was coming out of the health and beauty aisle and heading toward the other end of the meat aisle, [Appellant] approached her to inform Haupt that [she] had fallen in the meat aisle. Although Haupt could not see anything on the floor from a distance, when she approached the spot where [Appellant] fell, she found "a little puddle of water." Haupt then returned to [Appellant] who said she needed help. Haupt claims that an employee from the meat department, later identified by Furman as Reed, "got a paper towel and wiped up the water." Haupt could not tell where the water had come from, but believes she would have seen it as she was exiting the health and beauty aisle, and approaching the opposite end of the meat aisle, where she would have scanned a barcode to complete the clean sweep of the area. Therefore, the last time a Giant employee would have seen that area where the fall occurred was during the previous clean sweep an hour earlier.

Usually, when the meat cases leak, Giant employees block off the area and contact Ty Construction for repairs. There was a malfunction in the hot dog case on June 10, 2011, which caused the meat case to leak water onto the floor. Said malfunction caused the Giant store to submit an Emergency Work Requisition to Ty Construction for repairs. Giant's regional maintenance supervisor, Mark A. Nye, states that he only would have been called in to make repairs if the issue is repetitive or ongoing. [A] malfunction had been reported on April 26, 2011 and was reported again on June 24, 2011. However, Haupt claims that there was nothing leaking on the day of the accident.

Trial Court Opinion, filed 12/14/17, at 2-5 (citations omitted).

Appellant filed a complaint alleging negligence against Giant. Giant in turn filed an answer, along with a motion to transfer venue from Cumberland County to Franklin County. The court issued an order transferring the case to Franklin County. Thereafter, Giant filed a motion for summary judgment. Following oral argument, the court granted summary judgment. Appellant

filed a motion for reconsideration, which the court denied. Appellant timely appealed, and this matter is now properly before us.

Appellant maintains the trial court erred in granting summary judgment due to unresolved issues of material fact. Specifically, Appellant claims Giant was negligent for failing to: maintain its store in a safe condition; take reasonable precautions to prevent injury to patrons; conduct reasonable inspections of the store; and implement a policy to inspect, identify, and remedy hazards.

We review challenges to the entry of summary judgment as follows:

> [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. **See** Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***E.R. Linde Constr. Corp. v. Goodwin***, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted). "[T]he trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture,

surmise, guess or speculation." **Krishack v. Milton Hershey School**, 145

A.3d 762, 766 (Pa. Super. 2016) (brackets added; citation omitted).

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

**Rodriguez v. Kravco Simon Co.**, 111 A.3d 1191, 1193 (Pa. Super. 2015)

(quoting Restatement (Second) of Torts § 343 (1965)).

> In order to recover damages in a "slip and fall" case…the invitee must present evidence which proves that the store owner deviated in some way from his duty of reasonable care under the existing circumstances. This evidence must show that the proprietor *knew, or in the exercise of reasonable care should have known*, of the existence of the harmful condition. Section 343 also requires the invitee to prove either that the store owner helped to create the harmful condition, or that it had actual or constructive notice of the condition.

**Zito v. Merit Outlet Stores**, 647 A.2d 573, 575 (Pa. Super. 1994) (emphasis

added; citations omitted).

"It is unquestionable that a store owner owes a duty of care to the

patrons of the store. However, the owner of the store is not an insurer of the

safety of its customers." **Rodriguez**, 111 A.3d at 1195. But, where a

dangerous condition frequently reoccurs, a store may be found to have actual

notice of the condition. ***See Moultrey v. Great A & P Tea Co.***, 422 A.2d 593, 596 (Pa. Super. 1980).

Here, Appellant alleges Giant negligently maintained its store, which caused her injury. In order to prove this, Appellant must show Giant had either actual or constructive notice of the condition. That condition, of course, is the patch of water on the floor, which Appellant alleges came from a leaky refrigerator.

Appellant begins by reiterating deposition testimony to show the floor was wet at the time she fell. This includes Appellant's own testimony, as well as that of Giant's employee, Amy Haupt, and the store manager, Daron Furman. Both employees confirmed there were small spots of water on the floor. Furman described one of these spots as similar in size to an orange. Appellant also cites stills from the store's video camera, which show Giant employee Ed Reed wiping up the water with a paper towel.

Appellant then summarily concludes this recitation by asserting, "[t]his evidence would suggest that the source of the water on the floor that caused [her] fall was from the meat/hot dog refrigeration case." Appellant's Brief, at 20. It would not.

Even viewed in the light most favorable to Appellant as the non-movant, not a single one of these proffered facts suggests that is the case. The mere presence of water on the floor, without more, does not prove it came from the refrigerator. And proving the water came from the refrigerator is how Appellant attempts to show Giant had notice of the condition.

Assuming the water came from the meat case, despite a lack of record support for this supposition, Appellant also cannot prove Giant knew or should have known about the water on the floor. She posits the refrigerator's repair history provides evidence Giant knew the meat case had "problems with water accumulation" at the time of her fall. Appellant's Brief, at 6. As proof, she supplies three dates on which the meat case was serviced by a repair company. She suggests this evidence shows the "condition existed for such a period of time that Giant knew, or should have known, of it and had adequate time to correct it." *Id*., at 25.

One of the dates, April 26, 2011, was two months before Appellant fell. As the trial court notes in its analysis, Appellant does not provide any information that the case was leaking at that time; records show the case was actually serviced for a temperature malfunction on that date, rather than a leak. On the other two dates the case was serviced for leaks in June 2011, both occurred *after* Appellant's fall. Oddly, Appellant does not explain how subsequent leaks and repairs would have put Giant on notice that the refrigerator needed to be fixed *before* any proven leaks occurred.

Thus, all Appellant is able to prove is that she fell on a small patch of water in the grocery store. Appellant has supplied no additional evidence to identify the source of the water, or any proof that Giant had actual or constructive notice of the spill. Because Appellant's theory of the case relies on nothing other than "conjecture, surmise, guess or speculation," the trial

court properly granted summary judgment. *Krishack*, 145 A.3d at 766. As we see no error in this conclusion, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2018