J-A18039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL OBNEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WEST PENN POWER COMPANY | : | No. 175 WDA 2024 |

Appeal from the Order Entered January 4, 2024
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  1268-2020 (20CI01268)

BEFORE:  OLSON, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: OCTOBER 24, 2024**

Appellant, Michael Obney, appeals from the trial court's order granting summary judgment in favor of Appellee, West Penn Power Company ("West Penn").  We affirm.

**Background**

This case stems from an incident that occurred on February 28, 2019.  **See** West Penn's Motion for Summary Judgment, 7/28/23, at Exhibit 4 ("Obney Dep. I") at 4.[1]  At that time, Mr. Obney was working for The Municipal

_____

[1] Each party attached only selected portions of relevant deposition transcripts to their summary judgment filings.  Nevertheless, Mr. Obney included entire deposition transcripts in the reproduced record.  "It is well-established that this Court may only consider items which have been included in the certified record and those items which do not appear of record do not exist for appellate purposes."  **McEwing v. Lititz Mut. Ins. Co.**, 77 A.3d 639, 644 n.2 (Pa. Super. 2013) (citation and quotation marks omitted).  As such, we admonish Mr. Obney for including full deposition transcripts in the reproduced record, when the certified record does not contain full transcripts.

Authority of Westmoreland County ("MAWC"), where he was responsible for repairing water services, among other things. *See id.* at 13-14, 46-47, 86-88. On that day, MAWC was called to a house because the homeowner reported having no water. *Id.* at 86-87. Mr. Obney, and a crew of about five other MAWC employees, arrived at the home to investigate why the homeowner had no water and restore it. *Id.* at 87, 89; West Penn's Motion for Summary Judgment at Exhibit 1 ("Wingard Dep.") at 19-20. It was determined that excavation was needed, and MAWC called in a locate request to Pennsylvania's One Call System for the at-issue area. *See* West Penn's Motion for Summary Judgment at Exhibit 2 ("Kelvington Dep. I") at 103-05; Appellant's Brief at 17-18; West Penn's Brief at 11-12.[2] Utility locators

_____

[2] In general terms, with excavation work, Pennsylvania law imposes certain duties on, *inter alia*, excavators and facility owners. *See* 73 P.S. § 176 *et seq.*; *see also* 73 P.S. § 176 (defining 'facility owner' as a "public utility or agency, political subdivision, municipality, authority, rural electric cooperative or other person or entity who or which owns or operates a line"); *id.* (defining 'excavator' as "any person who or which performs excavation or demolition work for himself or for another person"); *id.* (defining 'line' or 'facility' as "an underground conductor or underground pipe or structure used in providing electric or communication service, or an underground pipe used in carrying, gathering, transporting or providing natural or artificial gas, petroleum, propane, oil or petroleum and production product, sewage, water or other service to one or more transportation carriers, consumers or customers of such service and the appurtenances thereto, regardless of whether such line or structure is located on land owned by a person or public agency or whether it is located within an easement or right-of-way"). Pennsylvania's One Call System is a "communication system … to provide a single nationwide toll-free telephone number or 811 number for excavators or designers or any other person … to call facility owners and notify them of their intent to perform excavation, demolition or similar work…." *Id.* A 'locate request' is "a communication between an excavator … and the One Call System in which a
*(Footnote Continued Next Page)*

arrived, including Camryn Wingard, a locator for USIC Locating Services, LLC ("USIC"); West Penn had contracted with USIC to locate and mark its facilities. *See* Mr. Obney's Brief in Opposition to Motion for Summary Judgment, 9/5/23, at Unnumbered Exhibit ("Obney Dep. II") at 109-10; Wingard Dep. at 17; West Penn's Brief at 7. Mr. Wingard was also responsible that day for marking facilities for Comcast and Windstream. Wingard Dep. at 20; West Penn's Brief at 12. Mr. Wingard did not complete marking of all the facilities he was responsible for locating before leaving the work site that day. *See* Mr. Obney's Brief at 23-24; West Penn's Brief at 12-16; *see also* West Penn's Motion for Summary Judgment at Exhibit 9 (email from Mr. Wingard to his supervisor, dated February 28, 2019, stating that "I only marked so.e [*sic*] [W]indstream lines and some electric lines. I never got to hook up to any service lines and didn't finish main lines").[3]

---

request for locating facilities is processed." **Id.** After receiving a locate request, the facility owner must provide the position of the facility owner's underground lines at the excavation site. **See generally** 73 P.S. § 177.

[3] Mr. Wingard maintained that he was unable to complete marking facilities because MAWC employees "started harassing" him, kept proceeding with their work even though Mr. Wingard was not done locating, and almost hit Mr. Wingard with their backhoe's bucket. Wingard Dep. at 21-23; **see also id.** at 50. Mr. Obney, on the other hand, said that Mr. Wingard did not talk to anybody from MAWC, and had left by the time Mr. Obney's co-worker started operating the backhoe to excavate the at-issue area. Obney Dep. I at 115-16, 146.

While MAWC was excavating, a fiberoptics line was struck by MAWC's backhoe. Obney Dep. I at 119-21.[4] Mr. Obney believed that another MAWC employee notified Pennsylvania's One Call System about striking the fiberoptics line, and MAWC continued excavating. *Id.* at 120-21. At a certain point, Mr. Obney said he began digging in the excavated hole with a shovel. *Id.* at 118. Therein, Mr. Obney discovered a "[b]lack conduit with water dripping -- coming out of the bottom." *Id.* at 121. Mr. Obney thought it was a copper water line, as he said he had traced the copper line from the curb stop. *Id.* at 123.[5] He explained that they retraced it and the MAWC employees collectively decided to cut into the conduit because "the service … was frozen, and if you get to the copper, you can thaw it out." *Id.* at 127; *see also id.* at 128. Mr. Obney used a metal knife to cut the conduit. *Id.* at 126-27, 130. When he did so, he experienced electrical shock, as the conduit was not for a water line, but instead for an electric line owned by West Penn. *Id.* at 130-31, 139; Mr. Obney's Brief at 17-18; West Penn's Brief at 19.[6]

_____

[4] Mr. Obney thought the backhoe struck just the conduit that the fiberoptics line was in, but he could not remember. Obney Dep. I at 120-21.

[5] Mr. Obney stated that he had seen conduit around water lines before in some housing plans. Obney Dep. I at 98-99.

[6] According to Mr. Obney, the copper water line MAWC was looking for was a "couple inches" below the at-issue electric line. Obney Dep. II at 206; *see also* Obney Dep. I at 124. In addition, Mr. Obney explained that electric lines usually are black with a red line. Obney Dep. I at 145-46, 149. However, with respect to the electric line that shocked him, Mr. Obney stated that "it was a black wire with a red line on each side, but there was a repair made in
*(Footnote Continued Next Page)*

- 4 -

According to Mr. Obney, this particular electric line was not located and marked by Mr. Wingard.  Obney Dep. II at 204; **see also** Obney Dep. I at 146.[7]  As a result, Mr. Obney claims he suffered, *inter alia*, memory loss and injury to his back.  **See** Amended Complaint, 5/28/20, at ¶ 8.

Mr. Obney sued West Penn, alleging, *inter alia*, that West Penn was negligent in failing to properly identify the energized electric line.  West Penn subsequently filed a motion for summary judgment.  Therein, it averred that Mr. Obney did not prove the elements of breach, but-for causation, and proximate cause.

On January 4, 2024, the trial court granted West Penn's motion for summary judgment, determining that Mr. Obney did not establish breach, but-for causation, and proximate cause.  On January 12, 2024, Mr. Obney filed a motion for reconsideration, which the trial court denied on January 31, 2024.  On February 1, 2024, Mr. Obney filed a timely notice of appeal.  The trial court

_____

between."  Obney Dep. II at 205.  Mr. Obney stated that West Penn repaired the at-issue line at some point prior to the excavation using conduit but did not put red tape on the repaired portion to identify it as an electric line.  **See** Obney Dep. I at 147 ("[O]bviously there was a break … in that second electric line that was not marked.  So whenever they fixed it -- it's an electric line going like this (indicating) -- well, it was looped (indicating) -- and however they fixed it, it was conduit.  … [A]fter they fixed it, they didn't keep it in a straight line; they didn't put dust on it; they didn't put red tape on it.").  At the time he cut into the conduit, Mr. Obney said he only saw the conduit portion of the line, which he relayed had no red tape.  **Id.** at 148; Obney Dep. II at 205.

[7] Mr. Obney stated that another electric line, located about five or six feet away from the line he cut into with his knife, was marked.  Obney Dep. II at 204.

thereafter directed Mr. Obney to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied.

**Issues**

In the Statement of the Questions Involved section of Mr. Obney's brief, he sets forth the following question for our review:

> Whether the trial court erred/abused its discretion when it granted [West Penn's] motion for summary judgment when the record contained sufficient evidence that … West Penn … owed a duty to [Mr. Obney] … to locate and mark their underground energized electrical line and failed to do so?

Mr. Obney's Brief at 15 (unnecessary capitalization omitted).  While this single question only challenges the trial court's conclusion that Mr. Obney did not demonstrate that West Penn breached a duty to Mr. Obney, the Argument section of Mr. Obney's brief also contains sub-headings addressing, and arguments relating to, whether he proffered sufficient evidence to establish but-for causation and proximate cause.[8]

It is well-settled that "[n]o question will be considered unless it is stated in the [S]tatement of [Q]uestions [I]nvolved or is fairly suggested thereby." Pa.R.A.P. 2116(a).  **See also** Pa.R.A.P. 2119(a) ("The [A]rgument shall be

_____

[8] Specifically, Mr. Obney's Argument section contains a main heading, stating, "The trial court erred/abused its discretion when it granted [West Penn's] motion for summary judgment when the record contained sufficient evidence that … West Penn … owed a duty to [Mr.] Obney[] to locate and mark their underground energized electrical line and failed to do so."  Mr. Obney's Brief at 21 (emphasis and unnecessary capitalization omitted).  Under this main heading are the following three sub-headings: "1. [West Penn's] Adherence to the Standard of Care"; "2. But-For Causation"; and "3. Proximate Cause[.]" **Id.** at 22, 25, 27 (emphasis and unnecessary capitalization omitted).

divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Here, Mr. Obney did not set forth his questions relating to but-for causation and proximate cause in his Statement of Questions Involved but, nevertheless, he included sub-headings and arguments relating to these questions in his Argument section. While we admonish Mr. Obney for failing to abide by the Rules of Appellate Procedure and do not condone such non-compliance, we will overlook his briefing error, as our review is not hindered and we are able to easily discern the issues he raises on appeal. *In re Adoption of G.K.T.*, 75 A.3d 521, 524 n.4 (Pa. Super. 2013) (determining that the appellant did not waive his issues by failing to include a Statement of the Questions Involved section in his brief, where his appellate issues were evident from the headings of his Argument section and Rule 1925(b) statement).[9]

**Analysis**

When reviewing a trial court's grant of summary judgment, we apply the following scope and standard of review:

> Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has

---

[9] West Penn urges us to find waiver because of Mr. Obney's non-compliant Statement of the Questions Involved. However, based on West Penn's brief, it is clear that West Penn was likewise able to discern Mr. Obney's issues and respond to them. Further, Mr. Obney raised these issues in his Rule 1925(b) statement.

- 7 -

stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (cleaned up).

*Proximate Cause*

For ease of disposition, we turn first to the issue of proximate cause.

With respect to proximate cause, the trial court opined:

"To state a cause of action for negligence[,] a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Bowman v. Rand Spear & Assocs., P.C.*, 234 A.3d 848, 860 (Pa. Super. 2020). Cause-in-fact, also known as "but[-]for" causation, requires that "the harmful result would not have come about but for the negligent conduct." *Thomas Lindstrom Co. v. W.C.A.B. (Brown)*, 992 A.2d 961, 967 (Pa. Cmwlth. 2010). Proximate cause is a determination of "whether the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm." *Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422, 428 (Pa. Super. 2010).

This case also implicates Pennsylvania's Underground Utility Line Protection Act, which created the "One[]Call" system to streamline safe digging and excavating near public underground utilities. 73

P.S. § 176 *et seq*. The act requires all utility companies (called "facility owners") to document the locations of all their underground lines and to participate in the One[]Call System. 73 P.S. § 177. Prior to digging, excavators must call the One[]Call line to provide facility owners time to mark their lines with color coded paint or flags prior to excavation. 73 P.S. §[§] 177 and 180.

After an excavating party notifies One[]Call, a ticket is generated and facility owners are given two business days to respond, or two hours when a request is designated an emergency. 73 P.S. §[]177. Facility owners are responsible for "marking the approximate position of underground lines or facilities." 73 P.S. § 177(5)(vi). While digging, excavators "shall employ prudent techniques, which may include hand-dug test holes, vacuum excavation or similar devices to ascertain the precise position of such facilities." 73 P.S. § 180(4). If an excavator hits a line or facility while digging, they are required to stop digging and call the One[]Call phone number and/or the facility owner so that the area can be inspected and re-marked. 73 P.S. § 180(7)-(8). Digging should not continue until the area has been cleared. *Id.*

\*\*\*

[C]onsidering the issue of proximate cause, proximate causation is a matter of law, and it "is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Eckroth*…, 12 A.3d [at] 428…. To determine proximate causation, a court should consider "(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; (c) lapse of time." *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1234 (Pa. 1983) [(citing Restatement (Second) of Torts § 433 (1965)].

***The undisputed evidence reveals numerous other factors which contributed to the harm in this case, including MAWC and Mr. Obney's failure to follow the One[]Call rules in the first instance. When MAWC hit the fiber[]optic line, they were legally required to stop their excavation entirely. Had they done so, the harm to Mr. Obney could not have***

***occurred.*** Even assuming *arguendo* that West Penn was negligent in failing to complete the above-ground markings, MAWC and West Penn's [*sic*] intervening conduct makes West Penn's conduct so remote as to be legally insufficient. As such, this court finds that West Penn's conduct was not the proximate cause of Mr. Obney's harm, and so West Penn is entitled to summary judgment on this basis.

Trial Court Order ("TCO"), 1/4/24, at 6-7 (emphasis added).

In the trial court's subsequent Rule 1925(a) opinion, it further elaborated:

[P]roximate cause is a question of law properly decided by the court prior to any submission of the case to a trier of fact. Balancing all of the evidence presented, this court concluded that Mr. Obney's injury was so remote from any action or inaction taken by West Penn that West Penn could not be proximately liable for the harm. This conclusion was made in light of the significant intervening conduct of both Mr. Obney and [MAWC].

***See also*** Trial Court Pa.R.A.P. 1925(a) Opinion, 3/5/24, at 4.

On appeal, Mr. Obney's entire argument on proximate cause is as follows:

Lastly, the trial court concluded that [Mr. Obney's] injury was so remote from any action or inaction taken by [West Penn] that [West Penn] cannot be proximately liable for the harm. Again, the issue of proximate cause in this case is clearly a genuine issue of material fact for the jury to consider.

[Mr. Obney] set forth several reasons in the record why he did not believe the unmarked electric line he was confronted with, while searching for the water line, did not look [*sic*] an electric line. That belief made [Mr. Obney] feel that he could come into contact with the unmarked electric line. [Mr. Obney] testified that the unmarked electric line "did not look like an electric line because West Penn [p]ower lines typically are marked in red and this particular line did not have red markings on it." [Obney Dep. II

- 10 -

at 204-05].[10]  Further, the unmarked electrical line was dripping water and electric lines typically do not drip water[, *id.* at 205,] and the unmarked electric line was just a "couple inches" above the water line that [Mr. Obney] was looking for.  [*Id.* at 206]. Lastly and importantly, [Mr. Obney] did not anticipate he was confronted with an electric line because [West Penn] did locate and mark an electric line that was only five to six feet away from the electric line that was not located and not marked on the ground.  [*Id.* at 204].

Additional testimony in the record to support [Mr. Obney's] position that [West Penn] was proximately liable for his injuries is the testimony of Ryan Kelvington, risk manager at [MAWC]:

> Q. You were asked a lot of questions about Mr. Obney in your investigation and what you learned from Mr. Obney and others that were there about his cutting into this line. Is it fair to say you believe he was justified in that particular instance to cut into the line?
>
> A. Well, my – my opinion on that is based on this – his narrative here where it says they broke this conduit with a digging bar and that he was using his knife to investigate it to see what was in there.  So, I mean, I know that the term "cut" – he's even used that – but to me it was more of an investigative -
>
> Q. Peel back the layer kind of thing?
>
> A. Right.
>
> Q. Did you see anything in your investigation to suggest to him, considering that it wasn't marked, that it was an electric line?
>
> A. I'm sorry?
>
> Q. Did you see anything in your investigation that would have suggested to him at that moment that it was an electric line?

---

[10] We were unable to find this direct quote on the cited pages of Mr. Obney's deposition transcript.  Notwithstanding, Mr. Obney agreed that West Penn's power lines typically have a red line on them and do not drip water.  Obney Dep. II at 204-05.  *See also* footnote 6, *supra*.

A. Again, my investigation and my discussion with everybody was that they had found what they were looking for. They assumed. And the fact that it was split by when it was hit with the digging bar and there was water leaking out of it, they assumed that they had found what they were looking for.

[Mr. Obney's Brief in Opposition to Motion for Summary Judgment at Unnumbered Exhibit ("Kelvington Dep. II") at 155-56].

Accordingly, on the issue of proximate cause raised by the trial court, the record clearly shows that [Mr. Obney] proffered evidence that creates genuine issues of material fact which requires a case to move forward for ultimate determination by a jury on the issue of proximate cause.

Mr. Obney's Brief at 27-30.

Problematically, in addition to not setting forth **any** law regarding proximate cause in his argument, Mr. Obney does not address the trial court's reasoning for why it ascertained that he failed to establish proximate cause. He does not discuss whether MAWC followed the One Call rules and if, under the relevant statute, the trial court was correct that MAWC had to stop digging after it hit the fiberoptics line.[11] Further, to the extent the law did require MAWC to halt digging upon striking the fiberoptics line, Mr. Obney does not respond to the trial court's claim that any harm to Mr. Obney would not have occurred had MAWC stopped its excavation as purportedly mandated, and that MAWC and Mr. Obney's intervening conduct rendered West Penn's conduct so remote as to be legally insufficient. Moreover, Mr. Obney does not examine the factors the trial court referenced in determining that proximate cause was

_____

[11] Mr. Obney does not dispute the trial court's assertion that MAWC struck the fiberoptics line prior to Mr. Obney's incident with the at-issue electric line.

- 12 -

not established, *see Vattimo*, *supra*, nor does he provide authority to counter the trial court's assertion that proximate cause is a question of law. *See* TCO at 6.[12]

Based on these deficiencies, we are constrained to find this issue waived. "When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our

---

[12] In addition to continuing to dig after striking the fiberoptics line, West Penn lists various ways in which Mr. Obney and MAWC were purportedly negligent in its brief, arguing that "[e]ven if West Penn breached any duties it owed to Mr. Obney (which it did not), Mr. Obney's and MAWC's own negligence predominate over any of West Penn's acts or omissions that may have contributed to the [i]ncident[,]" and that "[w]hen a defendant's negligence is so insignificant in comparison to that of other causes, Pennsylvania courts have found that such negligence *is not* a substantial factor (and thus not the proximate cause of) the harm." West Penn's Brief at 34 (citations omitted; emphasis in original); *see also id.* at 34-38 (identifying ways in which Mr. Obney and MAWC were allegedly negligent). For example, West Penn asserts that Mr. Obney and MAWC were required under the relevant law to, *inter alia*, check the status of the locate ticket before beginning excavation, but failed to do so. *See id.* at 8 ("Excavators are required to wait until the lawful start date/time before beginning their work. Excavators must confirm this by checking the locate ticket (which indicates whether all listed facilities were successfully located) and comparing the ticket to the physical locate marks present at the dig site.") (citations omitted); *id.* at 14 ("Mr. Obney admitted he did not know if anyone had even checked the status of [the locate ticket] before he and the crew had started digging. MAWC's corporate representative even stated: 'I wouldn't imagine our guys who are out there working would check that ticket.' Nonetheless, the MAWC crew began excavating in direct violation of the PA-811 rules.") (citations omitted); *id.* at 36 ("Instead of following the inherently safe techniques prescribed by law — *i.e.*, checking the status of the locate ticket, allowing locators to finish marking out underground utilities, and/or stopping excavation and notifying PA One[]Call after hitting a fiberoptics cable — MAWC and Mr. Obney chose to begin digging (and to keep digging) even when the law and all common sense dictated that they stop."). Mr. Obney has not filed a reply brief in response.

- 13 -

review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Id.*** (citation omitted). We are "neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter." ***Commonwealth v. Williams***, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring). Thus, because Mr. Obney does not address the trial court's reasoning for why it determined he failed to establish proximate cause, we deem this issue waived. ***Hardy***, 918 A.2d at 771 ("[W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.") (citations omitted).[13] We therefore affirm the trial court's order entering summary judgment in favor of West Penn.

Order affirmed.

_____

[13] Due to our finding of waiver with respect to the issue of proximate cause, we need not address Mr. Obney's other arguments pertaining to whether he established the elements of breach and but-for causation. ***See Eckroth***, 12 A.3d at 427 ("To prove their negligence claim, [the p]laintiffs … were required to establish: a legally recognized duty or obligation owed them by [the defendant]; a breach of that duty; a causal connection between the breach of duty and the resulting injury; and actual loss or damage suffered by plaintiffs. … To prove causation, a demonstration that the breach of duty was both the proximate cause and actual cause of injury was required.") (citations omitted).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>10/24/2024</u>